716 P.2d 1360

John SANTILLANES, dba Juanito's Restaurant and Lounge,
Plaintiff-Counterdefendant-Appellant,

v.

PROPERTY MANAGEMENT SERVICES, INC., dba Oxbow Motor Inn, Defendant-Counterplaintiff-Respondent.

No. 15694.

Court of Appeals of Idaho.

March 27, 1986.

Steven Richert of Green, Service, Gasser & Kerl, Pocatello, for plaintiff-counterdefendant-appellant.

James G. Reid of Ringert, Clark, Harrington, Reid, Christenson & Kaufman, Boise, for defendant-counterplaintiff-respondent.

SWANSTROM, Judge.

John Santillanes appeals from a district court judgment awarding Property Management Services, Inc., (PMSI), damages allegedly caused by Santillanes while he was in possession of a restaurant and lounge facility under a written lease. On appeal, Santillanes contends that the district court erred in awarding PMSI damages for loss of "non-disposable" inventory and for waste alleged to have been commit-

ted on the premises. Santillanes also challenges the district court's award of attorney fees to PMSI as the overall prevailing party while denying attorney fees to Santillanes for a claim upon which he prevailed. We affirm in part, vacate in part and remand for further proceedings.

John Santillanes leased the Oxbow Restaurant and Lounge in Chubbuck, Idaho, from PMSI. It was a companion facility to the Oxbow Motor Inn which was managed by PMSI. The lease began January 1, 1982, with a term of twelve months. During the term, PMSI complained that loud rock bands hired by Santillanes adversely affected business at the motel and brought destructive crowds to the lounge. Santillanes was late in several rent payments and eventually received a notice of default for failure to pay the rent for September. On September 17, Santillanes and PMSI agreed that Santillanes would vacate the premises by October 2, 1982, and would leave certain inventory items in exchange for the September rental and for the balance owing on a lease "assumption fee." Out of concern caused by rumors that the final night party at the lounge would "level" the building, representatives of PMSI placed chains and locks on the doors during the early morning hours of September 23rd. Police were called to the scene and the locks were removed an hour later on the same morning. Santillanes immediately filed a complaint seeking a temporary restraining order to prevent further interference by PMSI. The temporary restraining order was granted. Santillanes remained in possession of the premises until October 2.

After Santillanes vacated the restaurant, PMSI did substantial cleaning and made repairs it deemed necessary. PMSI also replaced certain equipment and non-disposable inventory (consisting of plates, glasses and silverware) which PMSI felt was "minimally" necessary to enable the restaurant to be reopened. About this time a utility company sent a deposit refund check for $1,592 to the "Oxbow Rest & Lounge." The check, intended for Santillanes, was misdelivered to and deposited by PMSI.

Following this incident, Santillanes amended his complaint to seek return from PMSI of the check proceeds. Santillanes also sought punitive damages and attorney fees. The district court granted partial summary judgment in favor of Santillanes, compelling return of the check proceeds to him. The court declined to award the punitive damages and attorney fees Santillanes had requested because of the conversion of his check.

Issues raised in PMSI's counterclaim against Santillanes remained to be decided, as did Santillanes' request for punitive damages and attorney fees on account of the "lockout." PMSI sought rental payments for the remaining three months of the lease term, for the balance owing on a lease "assumption fee," and damages for waste to the premises. Following trial on those issues, the court awarded $15,000 to PMSI as damages for the loss of non-disposable inventory and the cost of repairs. The court ruled that PMSI had agreed to waive rental for the last three months of the lease in exchange for Santillanes' vacation of the premises on October 2, but it ruled that Santillanes owed $6,000 for September rental and $3,000 as the unpaid balance of the lease assumption fee. These rulings have not been challenged and we will not disturb them on appeal. The trial court also awarded attorney fees to PMSI as the prevailing party. Further, the trial court found the lockout to be wrongful and made an award to Santillanes for attorney fees he incurred in obtaining the temporary restraining order. Finally, the court denied Santillanes' request for punitive damages because of the lockout. This appeal followed.

I

Santillanes first asserts that the trial court erred in awarding damages for the alleged loss of "non-disposable inventory"—table settings, dishes, kitchen utensils and the like. The lease, prepared by PMSI, did not require Santillanes to maintain any particular level of such inventory. Conse-

591

quently, any duty to preserve that property was the general obligation implied at law to refrain from committing waste. This obligation does not make a lessee the guarantor of the lessor's property. Rather, it subjects the lessee to liability for losses during the tenancy caused by negligence or improper use. *See generally* M. FRIEDMAN, FRIEDMAN ON LEASES § 10.2 (1983).

Here the evidence failed to show either the extent of loss during the tenancy or any connection between such loss and improper use or negligence by Santillanes. The lease itself did not list or describe any personal property in existence when the tenancy commenced on January 1, 1982. Although Santillanes had been given a six-month "interim" tenancy in 1981, no inventory list was made at that time either. Because PMSI took no inventory of non-disposable items when Santillanes began leasing the property, PMSI attempted to prove circumstantially what inventory was then on hand. In part PMSI relied upon figures shown by an inventory made in 1978, three years before John Santillanes' first (interim) lease. Santillanes' former wife, Rita, had operated the restaurant with another party before John took over in mid-1981. PMSI attempted to link John to the earlier operation in order to establish his liability for any loss of non-disposable inventory occurring while Rita operated the restaurant. However, in our view, this link was not established by substantial evidence.

In *Wing v. Hulet,* 106 Idaho 912, ·919, 684 P.2d 314, 321 (Ct.App.1984) we said:

Where causation is to be inferred from circumstantial evidence, the trier of fact must be able to find, reasonably, that the inference linking the defendant's conduct to the damage is more probable than an inference connecting the loss to other causes.

Moreover, the measure of damage—as well as the fact of damage—must be proven beyond speculation. *Eliopulos v. Kondo Farms, Inc.,* 102 Idaho 915, 643 P.2d 1085 (Ct.App.1982).

*See also Big Butte Ranch, Inc. v. Grasmick,* 91 Idaho 6, 415 P.2d 48 (1966); *Mitchell v. Lovato,* 97 N.M. 425, 640 P.2d 925 (1982). Based on the record before us, we find that the evidence falls short of proving waste, or the extent of any resultant damages, beyond speculation. PMSI's claim for "non-disposable inventory" was unsupported by substantial evidence and the district judge clearly erred by making an award on the claim. Accordingly, we must vacate the judgment because it contains this component of damages and the amount thereof cannot be separately identified.

II

Santillanes next asserts that the damages awarded to PMSI for the cost of repairs to the restaurant were not sufficiently established by the evidence. The lease contains both a covenant by Santillanes to "maintain, repair and keep in good order the interior of the building, including the plumbing, heating, and electrical facilities, and the grounds" and a covenant that he ·"will not suffer any strip or waste [of the premises]." The usual limitation excepting reasonable wear and tear is not found in this lease. The lease is also silent as to the condition of the premises at the beginning of the term. PMSI's counterclaim only broadly alleges that Santillanes committed waste. However, within this claim the parties freely litigated the issue of Santillanes' responsibility under the lease provisions to maintain the property and to make repairs. We will therefore address this broader aspect of the claim for "waste."

Generally, tenants' covenants to repair are construed with reference to all the circumstances involved. *See* M. FRIEDMAN, FRIEDMAN ON LEASES § 10.2 (1983). The measure of damages for breach of covenant to repair when the lease term has expired is the cost of putting the premises in repair. *Cruzan v. Franklin Stores Corp.,* 72 N.M. 42, 380 P.2d 190 (1963). *See also* M. FRIEDMAN, FRIEDMAN ON LEASES § .10.602a (1983); Annot., 80 A.L.R.2d 983 (1961). In

the present case, where there has been a mutual agreement to terminate the lease by October 2, we find that the measure of damages to be applied should be the same as where the term has expired.

■■■ Ordinarily, the mere existence of a landlord-tenant relationship does not impose any liability upon the tenant for mere wear and tear of the premises. *See generally* 49 AM.JUR.2d, LANDLORD AND TENANT, § 923 (1970). Reasonable wear and tear generally defines the usual deterioration of property by time and use in carrying on normal activities of the property despite ordinary care. M. FRIEDMAN, FRIEDMAN ON LEASES, § 10.601(b) (1983). Ordinary repairs would be those which keep the restaurant in efficient operating condition. *Id.* at § 10.601(a). However, a covenant to repair increases the tenant's duty by requiring him "to combat deterioration from normal wear and tear...." R. SCHOSHINSKI, AMERICAN LAW OF LANDLORD AND TENANT § 5:20 at 278 (1980). Where such a covenant has been put in a lease, it follows that "[u]nless expressly excepted by the language of the lease, the lessee is not relieved from liability resulting from reasonable wear and tear or obsolescence." *James S. Black & Co., Inc. v. F.W. Woolworth Co.*, 14 Wash.App. 602, 544 P.2d 112, 117 (1975). Here, no exception for reasonable wear and tear is contained in the lease, and none will be inferred. Santillanes is responsible for ordinary repairs and maintenance as required by reasonable wear and tear.

PMSI introduced evidence at trial establishing that the restaurant-lounge premises were in a general state of disrepair when PMSI retook possession. The transfer occurred immediately after Santillanes closed the lounge following his last evening of business there on Saturday, October 2. Therefore, Santillanes had no opportunity for the usual cleaning up required after a day's business. Beyond that, however, PMSI showed that the restaurant needed a complete cleaning and that various pieces of equipment had not been properly maintained. An employee of PMSI testified a number of booths and chairs were torn, all the locks from the doors were removed, the ceiling was damaged, the vinyl floors were worn and the toilets were plugged. There was also uncontradicted evidence of numerous "fist sized" or larger holes in sheet rock walls; that partitions in the rest rooms were "demolished" and light fixtures were broken. There was uncontradicted testimony that this type of damage was "ongoing" during the term of Santillanes' lease.

Santillanes relies on *Poesy v. Closson*, 84 Idaho 549, 374 P.2d 710 (1962), for the proposition that a landlord must prove the condition of the premises at the commencement and at the termination of the lease in order to show the cost of restoring the property. In this respect, Santillanes claims the proof has failed because there was no evidence that the leased premises were in a clean and repaired condition at the commencement of the lease. Santillanes also relies on *Poesy* for the proposition that the landlord, in order to establish a *prima facie* case, must prove that the *difference* in condition of the premises when returned by the tenant, i.e., the "depreciation" of the premises, was "beyond reasonable wear and tear." *Poesy v. Closson*, 84 Idaho at 552, 374 P.2d at 712 (quoting *Miller v. Belknap*, 75 Idaho 46, 51, 266 P.2d 662, 665 (1954)). In *Poesy* the lease provided that the lessee would return the leased premises to the landlord "in as good condition as they now are, *the usual wear, damage or injury * * * excepted.*" 84 Idaho at 551, 374 P.2d at 710 (emphasis added). As we have already noted Santillanes' lease contained no such exception. Therefore, *Poesy* is not controlling authority on what PMSI was required to prove in order to establish a prima facie case.

■■■ Once the landlord has established a prima facie case, the burden to rebut it falls upon the tenant. Here, Santillanes did not show that the leased premises were in a state of disrepair at the commencement of the lease; instead he offered only limited contradictory evidence concerning

the condition of the premises at the beginning of the term. John Santillanes was not present at trial. His former wife, Rita Santillanes, who had worked at the restaurant, testified that numerous repairs were made throughout the lease term by John and that the restaurant merely needed to be cleaned. She testified that some of the damage was caused by normal wear and tear. She also testified that under the lease provisions PMSI was responsible for some of the needed repairs. These disputed matters were for the trial court to resolve. Based on the covenants in the lease, we hold that there was substantial, competent evidence to support an award for damages for cleaning, repairs and maintenance which were the obligations of the lessee to perform.

The trial judge awarded $15,000 as damages for "waste" without distinguishing between the amount for replacement of non-disposable inventory and the amount for cleaning, repairs and maintenance. We have held that Santillanes is not liable for the alleged loss of non-disposable inventory. Therefore, we remand to the district court for reconsideration only of the damages for cleaning, maintenance and repairs of the premises, the equipment and fixtures.

### III

Next, we examine the award of attorney fees to PMSI as the prevailing party pursuant to the lease agreement. The attorney fees clause of the lease provides:

> 34. ATTORNEY FEES. In case suit or action is instituted to enforce any of the provisions of this lease, the prevailing party shall be entitled to recover from the other, costs and reasonable attorney's fees to be fixed by the court and if an appeal is taken from any decision of the trial court, such further sum as the appellate court shall adjudge reasonable for cost and attorney's fees.

Santillanes asserts that PMSI elected to terminate the lease, resulting in the relinquishment of the right under the lease for attorney fees. The default provision in the lease agreement states that: "In the event that any default shall be made in the payment of any rent, ... the lessor may, at its option, re-enter without notice, and cancel this lease." Santillanes argues that according to this provision, PMSI canceled the lease when it locked him out of the restaurant. Santillanes asserted this same argument in his motion for reconsideration before the trial judge.

■ In his order denying the motion for reconsideration, the trial judge relied on *Galindo v. Hibbard,* 106 Idaho 302, 678 P.2d 94 (Ct.App.1984), in stating that a reentry by a landlord constitutes an eviction and terminates the lease when it *materially disturbs* the possession of the tenant. The trial court found that the lockout by PMSI was "essentially momentary," and held that there was no material disturbance of the possession of Santillanes' interest. We agree with the district court's reasoning and find that the lease was not terminated by the "lock-out."

Santillanes next argues that even if the lease was not terminated, PMSI should not be awarded attorney fees because it was not the prevailing party. In support of this argument, Santillanes stresses that PMSI did not prevail on its claim for rental payments due for the remainder of the lease. Santillanes further argues that PMSI should not have prevailed on its damages claims. We have reversed the award of damages for loss of non-disposable inventory. Therefore, we vacate the award of attorney fees and remand to the district court to redetermine, in light of our holding, the entitlement to fees.

■ Finally, Santillanes argues that pursuant to I.C. § 12–120(1) he should be awarded his attorney fees for prevailing on his claim for the conversion of the $1,592 deposit refund check from the utility company which was mistakenly delivered to PMSI. As noted earlier, this claim was decided prior to trial on Santillanes' motion for partial summary judgment, but the court declined to award Santillanes any attorney fees at that time or at the close of

all the evidence. We hold that this was not error. To be entitled to the mandatory award of fees under I.C. § 12–120(1), Santillanes must show that the "amount pleaded" is $2,500 or less and that he prevailed in the action. In his amended complaint, in addition to his claim of $1,592 for return of the proceeds of the deposit check, Santillanes asked for the sum of $1,400 damages per day because of the "lockout" and for $50,000 punitive damages. On the basis of his pleading alone, Santillanes has not shown entitlement to a *separate* award of fees on the particular claim for $1,592.

The judgment of the district court is affirmed in part and vacated in part. The case is remanded for further proceedings consistent with this opinion. Costs to appellant Santillanes. No award of attorney fees on appeal.

WALTERS, C.J., and BURNETT, J., concur.