### SCHULTZ v. ENGLAND.

No. 9160.

Circuit Court of Appeals, Ninth Circuit.

Sept. 29, 1939.

Robert B. Gaylord and Robert B. Gaylord, Jr., both of San Francisco, Cal., for appellant.

Torrengano & Stark, of San Francisco, Cal. (M. C. Symonds, of San Francisco, Cal., of counsel), for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Appeal from an order of the District Court sustaining an order of the Referee in Bankruptcy confirming title of the Trustee in Bankruptcy to certain equipment, ownership of which was asserted by the appellant herein.

On or about September 10, 1930, the appellant, Niels Schultz, entered into a written agreement with California Fruit Juice Company, Ltd., the bankrupt herein, under the terms of which the appellant leased certain real property to the bankrupt for the term of six years, commencing on the 1st day of October, 1930, and terminating on the 30th day of September, 1936. The lease contained the following provisions:

"The Lessee further agrees not * * to place or permit to be placed, in, upon or about the said premises any unusual or extraordinary signs; and hereby acknowledges that the Lessor has reserved the exclusive right to the roof and all exterior

sidewalls of the said premises, and the same are not covered by this lease and are not to be used by the Lessee for any purpose whatever."

"The Lessee further agrees not to assign this lease, or any interest therein * * without the written consent of the Lessor * * * and that, unless such written consent has been had and obtained, any assignment, subletting or transfer or attempted assignment, subletting or transfer, either by voluntary or involuntary act of the Lessee, or by operation of law, or if the Lessee shall make an assignment for the benefit of creditors, such assignment, transfer, or subletting shall, at the option of the Lessor, terminate this lease."

"The Lessee further agrees not * * to make or suffer to be made any alterations or repairs of the said premises, or any part thereof, without the written consent of the Lessor; and that any locks or bolts furnished to the said premises, and any additions, alterations and improvements made to the said premises by either the Lessor or Lessee (except movable furniture put in at the expense of the lessee), shall become at once a part of the realty, and shall be surrendered with the premises, at the end of said term, or sooner termination thereof, * * *."

" * * * in the event of any holding over by the Lessee after the expiration of the term herein granted, such holding shall be deemed to be a tenancy from month to month only, at the rental provided for the last month of the said term, and otherwise upon all of the conditions hereinbefore specified, so far as applicable."

■ The bankrupt was engaged in the fruit juice business and the leased premises were used in connection with the extraction and preparation of fruit juices. During the term of the lease the bankrupt installed certain equipment in the premises, and it is the title to this equipment which is in issue in these proceedings. It is stipulated that all the equipment was connected to the building by pipes or by wiring, with one exception. That piece of equipment was attached to the building by belting. There is ample testimony to the effect that all the equipment could be removed without injury to the building. For clarity we may here add that appellee makes no contention that the equipment was not affixed to the realty, it being assumed by him that the several items thereof constitute "trade fixtures." But such assumption, together with any argument based thereon, is irrelevant to any issue in the case as no question of trade fixtures is involved. It must be borne in mind throughout our consideration of this case that we are construing a written lease, and that the question is whether or not under its terms the equipment installed in the leased premises constitutes "movable furniture put in at the expense of the lessee."

■ The bankrupt remained in possession of the premises after the expiration of the term of his lease, and until the date of bankruptcy, June 27, 1939. Upon the appointment of a receiver in the bankruptcy proceedings, the premises, including all the equipment, were turned over to the trustee, the appellee herein. Appellee filed a petition for an order directed to appellant to show cause why appellee should not be permitted to sell the equipment free and clear of any alleged right, title or interest asserted by appellant. Appellant filed its return to the order to show cause wherein it was alleged that the equipment in controversy was owned by appellant in fee simple, and that the bankruptcy court was without summary jurisdiction to determine the title thereto. The referee overruled the objection to his jurisdiction and a hearing was had. Thereafter an order was entered by the referee denying appellant's claim to such equipment. The appellant filed a petition for review by the District Court, and upon such review the District Judge affirmed the order of the referee. Appellant appeals from the order of the District Court affirming the order of the referee.

Appellant's contention that the referee was without summary jurisdiction seems to be based upon the provision of the lease above quoted, to the effect that the roof and the exterior walls of the building were expressly excepted from the terms thereof; and the fact that all of the equipment in question was attached in some fashion to either the roof or exterior walls of the building. Appellant argues in his brief that under the terms of the lease and under the decisions in California such equipment automatically became a part of the realty to which it was attached; that as to the walls and roof of the building the bankrupt tenant never had possession, therefore the equipment was not in the possession of the bankrupt at the time of the bankruptcy proceedings.

A simple reading of the provision of the lease referred to, which we have quoted above, illustrates the fallacy of appellant's

argument. It is not to be considered for a moment that the tenant leased the premises without also leasing the interior surface of the walls and roof. The clause relied upon immediately followed the provision prohibiting the tenant from placing any unusual signs on the building, and it is obvious that the parties had this prohibition in mind in inserting the alleged exception.

Furthermore, we quote from appellant's verified answer to the Order to Show Cause, "That on September 10, 1930, this respondent (appellant here) was, ever since has been, and still is the owner of the premises (described by metes and bounds, without reference to any exception); that said premises were in the possession of said bankrupt, at the date of adjudication herein, as tenant under respondent, and subsequently have continued and still are in the possession of the Receiver heretofore appointed herein and the trustee in bankruptcy herein as the successor of said receiver."

This is an admission on the part of appellant that the premises to which the equipment was attached were in the possession of the bankrupt. Hence appellant's argument based on the provisions of the lease excluding the exterior walls and roof from the provisions thereof, falls.

Appellant next argues that the equipment in any event became a part of the realty at the time of installation, and that "When the bankruptcy court undertakes in summary proceedings to determine the right of the trustee to remove this equipment, it undertakes to determine title to the real estate; an issue which is not within the summary jurisdiction of the bankruptcy court." This argument assumes to answer the very question involved. As we have heretofore said, the ownership of the equipment depends upon whether under the lease it did or did not become a part of the realty. As stated by this court in Heffron v. Western Loan & Building Co., 9 Cir., 84 F.2d 301, 303, 112 A.L.R. 501, "It is true, as the trustee contends, that, upon the filing of a petition in bankruptcy, all property in which the bankrupt has or may claim an interest passes under the control of the bankruptcy court * * *. The jurisdiction of the court is not limited to the administration of property which belongs without question to the bankrupt; it extends to the determination of questions of title. Ex parte Baldwin, 291 U.S. 610, 616, 54 S.Ct. 551, 78 L.Ed. 1020."

Appellant makes a further argument that the provisions of the law to the effect that the bankruptcy court may exercise summary jurisdiction if property is in the possession of the trustee are limited to actions to determine the validity of allegedly voidable transfers, and does not extend to controversies between the trustee and third parties. We are unable to read any such limitation in the law. Appellant refers us to Remington on Bankruptcy, Volume 5, 1936 Ed., pp. 260, 261, in support of his contention. The cited sections of Remington have to do with the jurisdiction of the bankruptcy court over adverse claimants in possession. It is pointed out in the citation referred to that the 1903 amendment did not enlarge the summary jurisdiction exercisable by the bankruptcy courts in respect to such adverse claimants. We find nothing in the statement of Remington to indicate that the bankruptcy court does not have summary jurisdiction where the property is in the possession of the bankrupt but claimed by a third party. On the contrary, we quote from Section 2350 of the same volume of Remington, p. 501: "If the possession, actual or constructive, of the property is in the bankrupt, or in his agent, or in someone not claiming a beneficial interest in it, or is in the receiver, marshal or trustee in bankruptcy, the bankruptcy court has summary jurisdiction over it by orders made in the bankruptcy proceedings themselves, and may summarily order its surrender or delivery; may bring all parties claiming interests in it into court, may determine all rights to it; * * *." See also, City of Long Beach v. Metcalf, 9 Cir., 103 F.2d 483, 485–487; and cases there cited.

Another argument of appellant in his attempt to show that the trustee was not in possession of the equipment, is to the effect that "there was neither lawful possession nor leasehold interest which the bankrupt could pass to the trustee." Appellant urges that the lease provides that any attempted assignment, whether voluntary or involuntary, is void, and no right of either possession or title vests in the assignee. We do not agree with this construction of the lease. We have quoted above the applicable clause of the lease, which instead of providing that the assignment is void, provides that such assignment or transfer shall, at the option of the Lessor, terminate the lease. There is no evidence that appellant ever exercised his option to terminate the lease, and fur-

thermore it is well settled that a trustee may continue to occupy the premises for a reasonable period, sufficient to enable him to remove the bankrupt's property or sell the same. Remington on Bankruptcy, 4th Ed., Vol. 3, Section 1217. Therefore the possession of the trustee, pending the sale and determination of appellant's claim of title, was not illegal.

■ Turning then, to the appeal on its merits, we examine the California law as to the ownership of the equipment in question. It is elemental that the trustee stands in the shoes of the bankrupt (except as against fraudulent conveyances and similar transactions, which are not here involved) and can assert no greater rights against the landlord than could have been asserted by the bankrupt in the absence of bankruptcy proceedings. If, then, under the California law the bankrupt had the right to remove the equipment in question, it follows that the decision of the district court confirming title in the trustee in bankruptcy should be affirmed.

Appellant first argues that under the terms of the lease the equipment in question became a part of the realty at the time it was installed. His contention here is that the equipment fell within the category of "additions, alterations and improvements made to said premises" rather than within the category of "movable furniture put in at the expense of the lessee," and hence was not removable by the bankrupt at any time. We are referred to the case of Realty Dock & Improvement Corp. v. Alden Anderson, 1917, 174 Cal. 672, 164 P. 4, 7, wherein the California court held that a safe deposit vault was an "alteration, addition and improvement" to the premises leased, within the meaning of a clause of the lease providing that all such alterations, additions or improvements should be the property of the lessor and should remain upon and be surrendered with the premises. The court in the cited case held that it was immaterial, under such provision of the lease, that the vault was a "trade fixture," since the term "improvement" is more comprehensive than the word "fixture." It was held that the law relating to removal of trade fixtures is inapplicable in the face of a provision in the lease contracting away the right of removal.

There is an important distinction, however, between the lease construed by the California court in the Realty Dock case, supra, and the lease with which we are here involved. In the present lease we have an exception of "movable furniture put in at the expense of the lessee" from the general term "additions, alterations and improvements made to the premises." There was no such exception in the Realty Dock lease, therefore the court in that case held that the vault was not removable.

It is therefore necessary to determine whether the exception "movable furniture put in at the expense of the lessee" removed the equipment from the provision in the lease that "additions, alterations and improvements" were to become a part of the realty.

■ To repeat the real question: Is the term "movable furniture put in at the expense of the lessee", as used in the lease, broad enough to include the equipment mentioned above? The Referee answered the question in the affirmative, and we agree with this finding. We quote with approval from the opinion of the Referee herein: "In dealing with the words 'movable furniture' as well as with the words 'additions, alterations and improvements,' it is to be remembered that 'The question is not * * * what this expression might mean if it stood alone, or if it were used in some connection other than that appearing here. We must determine the sense in which the words were used by the parties to this lease, and to so determine we must look to the instrument as a whole.' Pringle v. Wilson, 156 Cal. 313, 318, 104 P. 316, 318 [24 L.R.A.,N.S., 1090], for, as was said in Simen v. Sam Aftergut Company, 26 Cal.App. 361, 364, 146 P. 1058, 1059, 1060 '* * * a lease, like every other contract, must be considered and construed in its entirety so as to give effect if possible to the mutual and manifest intentions of the parties. * * *'"

Section 1641 of the California Civil Code provides: "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."

■ We are convinced from a reading of the entire lease, that the parties had in mind the equipment being installed by the bankrupt when they provided for a removal of the "movable furniture put in at the expense of the lessee." If we were to hold otherwise it would be difficult to understand why any reference to furniture should have been made in the lease. The provision is that any additions, alterations

and improvements except movable furniture put in at the expense of the lessee shall attach to the realty. In other words, the parties unquestionably were assuming to except something which, without the exception, would have been included in the phrase "additions, alterations or improvements." Such "furniture" as tables, chairs, etc., could never be considered to be an "addition, alteration or improvement" and therefore would not have to be excepted from the broader term in order to allow removal by the tenant. This conclusion is further borne out by the phrase "put in at the expense of the lessee," which unquestionably refers to "installation" or the like. It is extremely unlikely that this expression would be used to refer to chattels owned by the lessee, which were not affixed in some manner to the premises.

This interpretation of the words "movable furniture put in at the expense of the lessee" is in accord with the decision in Century Holding Co. v. Pathé Exchange, Inc., 200 App.Div. 62, 192 N.Y.S. 380, 382, wherein the court said, "If the words 'movable office furniture,' in the lease, were intended to be limited to such furniture as chairs, desks, tables, or other personal property, which is not in any wise affixed to the building, it is difficult to understand why any reference to such furniture should have been made in a lease. It seems to us that the word 'furniture' must be given a meaning broad enough to embrace any movable equipment installed in the office to facilitate the transaction of the tenant's business, and that the words 'movable office furniture' shall be deemed as synonymous with the words 'movable fixtures,' as distinguished from fixtures which are so affixed to the realty that their removal would deface or injure the walls, ceilings, or floors."

Appellant urges, however, that even conceding that the lease gave the right of removal of the equipment, that right lapsed with the termination of the original lease. He cites the case of Earle v. Kelley, 21 Cal.App. 480, 484, 132 P. 262, as authority for the proposition that in the absence of express provision in a renewal lease the right to remove trade fixtures lapses; and that if a tenant holds over from month to month this constitutes a new lease within the scope of the rule. We agree with appellant that this is the California law. However, appellant seems to overlook the provision in the lease to the effect that the month to month tenancy after the expiration of the lease shall be "otherwise upon all of the conditions hereinbefore specified, so far as applicable." One of the conditions of the lease was the right to remove the "movable furniture." Therefore the rule of Earle v. Kelley, supra, is not applicable.

Appellant contends that there has been an unnecessary duplication of parts of the record by appellee and therefore costs should be assessed against appellee for said unnecessary parts. From a consideration of the record, we do not find that appellant's charges have merit.

The decision of the District Court affirming the order of the Referee is sustained.