640 P.2d 925

J. C. MITCHELL, Plaintiff-Appellant and Cross-Appellee,

v.

Julio LOVATO, Doris Lovato, Eloy Baca, Edward J. Waldroop and Tedra G. Waldroop, Defendant-Appellees and Cross-Appellants.

No. 13645.

Supreme Court of New Mexico.

Feb. 17, 1982.

Modrall, Sperling, Roehl, Harris & Sisk, George T. Harris, Jr., Susan Stockstill Julius, Albuquerque, for J. C. Mitchell.

William F. Webber, Gallagher & Walker, Peter E. Gallagher, Morris Stagner, Albuquerque, Jeff Bingaman, Atty. Gen., Santa Fe, for Julio Lovato et al.

## OPINION

FEDERICI, Justice.

Plaintiff-appellant (Mitchell) brought suit in district court seeking injunctive relief, damages and attorney fees arising out of an alleged breach of a commercial lease. Following a non-jury trial, the court granted judgment in Mitchell's favor as to only a portion of the relief sought and he appealed. We affirm.

Mitchell leased premises in Albuquerque to the Waldroops for the years 1970–1985. Waldroops covenanted to use the building as a package liquor store/cocktail lounge only and not to remove the liquor license from the premises during the term of the lease. The lease provided that the premises would be returned in the same condition in which they had received them, reasonable wear excepted, and Waldroops acknowledged that they received the premises in good condition. The Waldroops assigned their interest under the lease to their co-defendants-appellees (Lovatos), who assumed all obligations and covenants under the lease. Mitchell consented to this assignment.

Several acts occurred on the premises in 1980, which led the Department of Alcoholic Beverage Control to order the Lovatos to transfer the liquor license. Mitchell sought a preliminary injunction against the removal of the license, alleging that it was subject to his landlord's lien and that if removed, the State Liquor Department and City had indicated that no other liquor license would be allowed to transfer to the premises. The injunction was denied and the Lovatos transferred the license to third persons and to another location. Mitchell then terminated the lease.

At trial, Mitchell sued for damages for breach of the lease covenants. He also alleged damages resulting from a wrongful removal of fixtures from the property. The Lovatos filed a counterclaim seeking damages for alleged wrongful termination of the lease.

Relevant findings of the court include: (1) Lovatos were fully responsible for all covenants in the lease; (2) Lovatos breached the lease by transferring the license but there were no damages incurred because they would continue to pay the rent; (3) Lovatos breached this lease by removing fixtures in the amount of $3,800 and are liable in damages in this amount to Mitchell; (4) Mitchell is not entitled to damages for loss of use of the premises during renovation nor for renovation costs; (5) Mitchell's election to terminate the lease forecloses any claim for damages and future rent; (6) Lovatos are entitled to no damages on their counterclaim.

We note from the record that the Lovatos had a tenant ready to assume the lease and willing to make $20,000 worth of improvements on the property.

## I.

The first issue we address is whether Mitchell is entitled to damages for breach of the express covenant not to transfer the liquor license.

In his brief in chief, Mitchell conceded that where a lessor terminates the lease, the lessee's obligation to pay future rent terminates. *See* 3A G. Thompson, Commentaries on the Modern Law of Real Property § 1299 at 471 (1981). Mitchell asserts, however, that termination of this lease did not end his right to collect damages for breach of the express covenant not to transfer the liquor license from the premises. The Lovatos contend that Mitchell is not entitled to damages for breach of this covenant because no damages were proven at trial.

We recognize that leases commonly include a multitude of covenants which the lessee agrees to perform. If the lease contains nothing more, a violation of one of the covenants gives to the lessor an action for breach of contract but no power to end the relationship. 2 R. Powell, The Law of Real Property § 231[3][a] (1981 ed.). Accordingly, despite Mitchell's termination of the lease, he may still maintain an action for breach of covenants contained in the lease.

It is a basic tenet of contract law, however, that a party suing for specific damages has both the burden of proving the existence of injuries and the burden of proving damages with reasonable certainty so that the determination of the amount of damages by a judge or jury will not be based upon speculation or conjecture. *Bank of New Mexico v. Rice*, 78 N.M. 170, 429 P.2d 368 (1967); *Louis Lyster, Gen. Con., Inc. v. Town of Las Vegas*, 75 N.M. 427, 405 P.2d 665 (1965); *Gulf Refining Company v. Etcheverry*, 85 N.M. 266, 511 P.2d 752 (Ct.App.), *cert. denied*, 85 N.M. 639, 515 P.2d 643 (1973). *See* D. Dobbs, Handbook on the Law of Remedies § 3.3 at 151 (1973 ed.).

Mitchell has fulfilled the first burden, that of proving the existence of injury. It would be unrealistic to fail to recognize that a liquor license is of peculiar value to these premises. We realize that this property, equipped for use as a lounge and package store and long operated as such, depreciated upon the transfer of this license. However, as the court held in *Ritz v. Rafail*, 366 Pa. 274, 77 A.2d 411, 413 (1951), under a similar set of facts, "an exact, or even approximate measure of the lessors' damages could not be formulated * * * for breach of the lessees' covenant [not to transfer the liquor license from the premises], for they are necessarily speculative and indeterminate * * *."

In this case, Mitchell was unable to overcome the inherent speculative nature of these damages. If proof of the cause of damages is certain, "mere uncertainty as to the actual amount will not preclude recovery." *Jackson v. Goad*, 73 N.M. 19, 23, 385 P.2d 279, 283 (1963); *Bank of New Mexico v. Rice, supra*. Mitchell, however, failed to prove by reasonable certainty the extent of the diminution in the market value of the property. There was no proof of the market value of the premises before and after the transfer of the license. He provided only the estimated costs of transforming the building into a different kind of building, one which would generate a slightly higher income than he received at the time he terminated the Lovatos' lease. This estimated cost ranged from $78,955.00 to $125,-356.00 and although coupled with a real estate appraiser's opinion that the building should be renovated into retail space, which would entail $92,350.00 in total damages, this proof does not meet the "reasonably certain" standard for damages discussed above.

Accordingly, we uphold the trial court's finding that Mitchell is not entitled to damages for breach of the covenant not to transfer the liquor license.

## II.

We next address the issue of whether Mitchell is entitled to damages for the lessees' breach of the express covenant to return the premises in their original condition.

This Court has held that generally, the measure of damages for breach of a covenant to surrender in a prescribed condition is the cost of putting the premises in the prescribed condition. *Cruzan v. Franklin*

*Stores Corporation*, 72 N.M. 42, 380 P.2d 190 (1963); *Snider v. Town of Silver City*, 56 N.M. 603, 247 P.2d 178 (1952). A covenant similar to the one before us has been construed to mean that the property must be returned in rentable condition. *Cruzan.*

■ In this case, although there was testimony that when Lovato entered the premises, they were in "A–1" condition and that, in its present condition the building is unrentable, there was scanty evidence as to what the cost of returning the premises to their original or rentable condition would be. The only evidence regarding the cost required to clean up and return the premises to their original condition was testimony indicating such cost would range from $5,000.00 to $20,000.00. This evidence falls short of proving damages with reasonable certainty and precludes his claim to damages. *See* Dobbs, *supra; Bank of New Mexico v. Rice, supra.*

### III.

We next address the issue of whether the trial court's finding that fixtures were wrongfully removed by the Lovatos is supported by the evidence.

A review of the evidence shows that the Lovatos removed from the premises booths and stools, walk-in boxes, sinks and refrigerators that were behind the bar. According to the record, all of these items were originally purchased by the Lovatos. However, the issue of ownership of such items was discussed in *Southwestern Public Service Co. v. Chaves County*, 85 N.M. 313, 512 P.2d 73 (1973), where this Court stated that the intention of the parties is controlling in determining whether an article is a fixture and part of the realty or whether it remains personalty. When, as here, the parties' intent is expressed in their written agreement, the lease provision controls ownership of such articles. *Boone v. Smith*, 79 N.M. 614, 447 P.2d 23 (1968).

Accordingly, we look to the lease which provides in pertinent part:

[A]ny and all alterations, additions, and improvements, *except shelving and moveable furniture*, made at Lessee's own ex-

pense after having first obtained the written consent of Lessor therefor, in accordance with the provisions contained in Paragraph VII, hereof, whether attached to the walls, floors, premises, or not, shall immediately merge and become a permanent part of the realty, and any and all interest of the Lessee therein shall immediately vest in Lessor, and all such alterations, additions, and improvements shall remain on the said premises and shall not be removed by Lessee at the termination of this Lease. [Emphasis added.]

Thus, the question becomes whether the above-mentioned items fall within the "movable furniture" exception. We follow the reasoning several courts have taken in interpreting such "movable furniture" provisions:

The provision is that any additions, alterations and improvements except movable furniture * * * shall attach to the realty. In other words, the parties unquestionably were assuming to except something which, without the exception, would have been included in the phrase, "additions, alterations or improvements." Such "furniture" as tables, chairs, etc., could never be considered to be an "addition, alteration or improvement" and therefore would not have to be excepted from the broader term in order to allow removal by the tenant. * * * It is extremely unlikely that this expression would be used to refer to chattels owned by the lessee, which were not affixed in some manner to the premises.

*Schultz v. England*, 106 F.2d 764, 768–69 (9th Cir. 1939).

"It seems to us that the word 'furniture' must be given a meaning broad enough to embrace any movable equipment installed in the office to facilitate the transaction of the tenant's business, and that the words 'movable office furniture' shall be deemed as synonymous with the words 'movable fixtures,' *as distinguished from fixtures which are so affixed to the realty that their removal would deface or injure the walls, ceilings, or floors.*"

*Id.* (emphasis added), *quoting Century Holding Co. v. Pathé Exchange*, 200 App. Div. 62, 192 N.Y.S. 380, 382 (1922).

Although Lovato testified that he removed anything that "wasn't nailed down," other testimony showed that there were "gaps in the tile where the big coolers had been pulled out"; "the office had been completely torn out and was just dangling wires"; "it was a shell of a building"; all of the breakers and electrical equipment associated with coolers and walk-in boxes were removed. Photographs in evidence showed defacement and injury to certain floors and walls, caused by removal of these items.

■ The rules of appellate review require this Court to sustain the trial court's findings and conclusions if they are supported by the evidence. *Hertz Corp. v. Ashbaugh*, 94 N.M. 155, 607 P.2d 1173 (Ct. App.), *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980); *Farmers and Stockmens Bank of Clayton v. Morrow*, 81 N.M. 678, 472 P.2d 643 (1970). In light of the exhibits, testimony and construction of the term "movable furniture," we are convinced that the court's findings that these fixtures should have remained on the premises and that the Lovatos are liable for their removal are supported by the evidence.

■ The only evidence in the record as to the value of these items is Lovato's statement that "all these things" were worth about $3,800.00. This testimony constituted sufficient evidence for the trial court's valuation of the items removed, since Lovato's acknowledgement was not contradicted by any other evidence in the proceeding. *See Leonard Motor Company, Inc. v. Roberts Corporation*, 85 N.M. 320, 512 P.2d 80 (1973).

We find our conclusions on these three issues dispositive of all other issues raised in this appeal.

The trial court is affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, and RIORDAN, J., concur.