Argued and submitted October 26, 1990, judgment modified by vacating in part and remanding; otherwise affirmed; affirmed on cross-appeal February 20, 1991

BOISE JOINT VENTURE;
George A. Brown and Joan T. Brown
for the George A. Brown Family Trust;
George E. Brown and Janice Y. Brown,
for the George E. Brown Family Trust;
John Stephen Becharas,
Co-Trustee Under the Trust Indenture of
John Stephen Becharas and Angeline Becharas;
Glenn W. Graf, Sr., Trustee of the Graf Family Trust;
Lawrence Herman, Trustee of
the Lawrence Herman Trust, and individually;
Ruth Herman; Carl Nevoso; Lydia D. Nevoso;
William Woolman; Joanne Woolman;
Raymond Miller; Betty Miller;
George A. Brown; Theodore J. Becharas;
William G. Moseley; Daphne Moseley;
Paul Alary, Trustee of the Alary Family Trust;
Dorothy Alary, Trustee of the Alary Family Trust;
Jensen and Horowitz, by Alec C. Horowitz,
*Respondents - Cross-Appellants,*

*v.*

Teddy N. MOORE,
dba Nendel's Motor Inns,
*Appellant - Cross-Respondent.*

(A8808-04289; CA A62081)

807 P2d 707

Stephen G. Leatham, Vancouver, Washington, argued the cause for appellant - cross-respondent. With him on the briefs was Williams, Kastner & Gibbs, Vancouver, Washington.

Barry L. Adamson, Lake Oswego, argued the cause for respondents - cross-appellants. With him on the briefs were Roger Hennagin and Hennagin & Shonkwiler, Lake Oswego.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Plaintiffs, Boise Joint Venture (BJV), and its general partners, brought this breach of contract action. Defendant was held liable on BJV's motion for partial summary judgment. After a trial to the court on the issue of damages, a judgment for damages and attorney fees was entered in favor of BJV. We reverse in part on defendant's appeal and affirm on the cross-appeal.

Plaintiff George E. Brown has invested in motels and hotels for 35 years. In 1982, he was contacted by a broker about purchasing a motel in Boise, Idaho. Brown was not interested for several reasons, one of which was the need to find a qualified tenant to operate it. The broker later contacted Brown and told him that defendant was interested in leasing the motel. After meetings and negotiations, Brown formed a partnership (BJV) for the sole purpose of purchasing the motel.

BJV's purchase of the motel and its lease to defendant took place on September 1, 1982. The lease was to run from September, 1982, to August, 1992. The rental payments were $22,542.58 per month for the first year and $28,542.58 per month thereafter. The lease contained a provision that the rents were $6,000 per month more than the payments on the underlying debt and were to remain $6,000 more in the event that BJV's underlying debt on the property was restructured.

From the beginning, the motel generated a negative cash flow, and defendant's payments were almost always late. In an effort to attract more business, defendant built, with BJV's consent, an "Executive Wing" at a cost of approximately $700,000. However, the property continued to lose money and, in April, 1988, defendant discontinued payments and informed BJV that he would make no more payments under the lease. The BJV partners discussed their options, determined that the debt of BJV exceeded the value of the property and decided to let the property go to foreclosure. It was sold at foreclosure in October, 1988.

The trial court held, and the parties do not dispute, that Idaho law controls. Defendant first assigns error to the trial court's award of damages measured by the net lease payments due after October 14, 1988, the date of the trustee's sale

of the property. Defendant argues that, under Idaho law, the sale ended both BJV's ownership interest and defendant's leasehold interest, thereby terminating any interest on which BJV could recover lost rent.

BJV does not dispute that Idaho follows the "majority rule" that a landlord may not recover from a tenant any rents that accrue after a termination of the landlord's status as landlord, whether by sale or involuntary transfer. It contends, however, that the rule does not apply here, because the lease specifically provided that the monthly rent would always be $6,000 more than the underlying debt. BJV argues that, because the award is for the anticipated lease profits of $6,000 per month, which BJV would have realized but for the foreclosure, the damages are not for future rent but are for lost profits and, therefore, are determined by contract, not property law.

■    However, under Idaho law, once its status as landlord terminated, BJV lost its right to rely on the agreement between the parties. Idaho law subordinates contract law to the common law landlord-tenant rules:

> "A surrender of a lease is the yielding up of a *tenancy* to the Lessor before the end of the tenancy called for in the applicable lease. A surrender occurs and the tenancy is submerged and extinguished either by agreement or by operation of law.

> "As a result of a surrender, all rights and responsibilities which would otherwise accrue after the date of surrender under the lease are extinguished. Thus, for example, when a surrender occurs, the lessee need not pay any rent which has not accrued as of the date of the surrender.

> "We have underscored the words 'tenancy' and 'leasehold' [sic] to emphasize that it is the *lease agreement* and all rights and responsibilities flowing from it which are surrendered." *Olsen v. Country Club Sports, Inc.*, 110 Idaho 789, 793, 718 P2d 1227 (Idaho App 1985). (Citations omitted; emphasis in original.)

Defendant surrendered his tenancy when he notified BJV that he would make no more payments under the lease. BJV's conduct was inconsistent with the continuation of the tenancy when it let the property go to foreclosure. That conduct constituted acceptance of the surrender by operation of

law. *See Olsen v. Country Club Sports, Inc., supra,* 110 Idaho at 794. Even if, as BJV argues, $6,000 is a "contractually-identified" anticipated profit "contemplated by the parties," nonetheless, under Idaho law, any right to that profit under the contract was extinguished on the date of the trustee's sale. It was error to award damages for amounts due after October 14, 1988.[1]

■    Defendant next assigns error to the award of late fees, arguing that BJV waived any right to them. Under Idaho law, waiver is a question of fact and must be shown by a clear intent to waive, although that intent may be established by conduct. *Riverside Development Co. v. Ritchie,* 103 Idaho 515, 650 P2d 657 (1982). Defendant contends that BJV's intent to waive is shown by its acceptance, for more than five years, of late payments without any demand for late fees.

There was no error. The trial court determined that both parties unequivocally knew the meaning of the non-waiver provision in the lease. Under that provision, BJV's rights under the agreement could be waived only by a written waiver. The agreement supports the trial court's finding that BJV did not intend to waive its right to late fees.

■    Defendant's final assignment of error is the trial court's determination that BJV was the prevailing party and, thus, entitled to attorney fees. Under Idaho Rules of Civil Procedure,[2] the determination of "prevailing party" is within the sound discretion of the trial court. We find no abuse of that discretion.

■    On cross-appeal, BJV assigns error to the trial court's

---

[1] It follows that the pre-judgment interest on that amount cannot be awarded; hence, we must remand for recalculation of interest.

[2] IRCP 54(d)(1)(B) provides:

"In determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties, whether there were multiple claims, multiple issues, counterclaims, third party claims, cross-claims, or other multiple or cross issues between the parties, and the extent to which each party prevailed upon each of such issues or claims. The trial court in its sound discretion may determine that a party to an action prevailed in part and did not prevail in part, and upon so finding may apportion the costs between and among all parties in a fair and equitable manner after considering all of the issues and claims involved in the action and the resultant judgment or judgments obtained."

holding that subparagraph 11A of the lease did not entitle BJV to recover its $600,000 investment in the property. The trial court held that the provision applies to indemnity for third parties, not between the parties. Subparagraph 11A provides:

> *"Tenant's Covenants of Indemnity.* Tenant further covenants and agrees to protect, indemnify and forever save harmless the Landlord and the Demised Premises of and from any and all judgments, loss, costs, charges and expenses whatsoever, including attorneys' fees, arising out of:

> "A.  Any breach or default by Tenant in the performance or observance of any of the covenants as contained herein."

BJV does not contend that that provision is ambiguous. Thus, its meaning is a question of law, *DeLancey v. DeLancey,* 110 Idaho 63, 714 P2d 32 (1986), and is to accord with the provision's ordinary meaning. *Homes by Bell-Hi, Inc. v. Wood,* 110 Idaho 319, 715 P2d 989 (1986). BJV argues that subparagraph 11A could only apply between the parties and that the trial court's interpretation makes the other subparagraphs of paragraph 11 redundant.

BJV's reading ignores the ordinary meaning in a commercial lease situation. The title of paragraph 11 is "Tenant's Covenants of Indemnity." The trial court's reading does not render subparagraph 11A redundant of the other subparagraphs; rather, it interprets the provisions as a consistent whole. Each subparagraph sets out a source of potential liability under which defendant would have to indemnify BJV. Under subparagraph A, defendant would be required to indemnify BJV for claims that might arise out of defendant's failure to perform his obligations under the lease, such as, for example, failure to pay assessments or taxes. The other four subparagraphs protect BJV from liability for lawsuits, statutory violations, accidents, injuries or damages to person or property arising out of defendant's operation of the motel and damages to adjoining property. We agree with the trial court's interpretation that subparagraph 11A does not apply to claims between the parties and does not provide a contractual basis on which BJV may recover its lost equity.

We also reject BJV's assignment of error that the trial court erred in denying it $600,000 as consequential damages. It argues that defendant could foresee at the outset

of the contract that BJV would lose its investment if defendant failed to make payments, because the property would go to foreclosure. To recover its equity as consequential damages, BJV had to prove that, at the time of contracting, the parties contemplated that, as the probable result of defendant's failing to make lease payments, BJV would allow its interest to be foreclosed and forfeit its equity. *See Brown's Tie & Lumber v. Chicago Title,* 115 Idaho 56, 764 P2d 423 (1988); *Traylor v. Henkels & McCoy, Inc.,* 99 Idaho 560, 585 P2d 970 (1978). We agree with the trial court that BJV failed to prove that, when the parties contracted to lease the motel, they contemplated that defendant would be liable for repayment of BJV's equity. There was no error.

On appeal, judgment modified by vacating paragraphs 2 and 4; remanded for recalculation of interest in paragraph 3 not inconsistent with this opinion; otherwise affirmed; affirmed on cross-appeal.