855 P.2d 1043

P.S.G. LIMITED PARTNERSHIP, a New
Mexico limited partnership, Cross–
Plaintiff–Appellant,

v.

AUGUST INCOME/GROWTH FUND
VII, a California limited partnership,
et al., Cross–Defendants–Appellees,

and

P.S.G. LIMITED PARTNERSHIP, a New
Mexico limited partnership, Third–
Party–Plaintiff–Appellant,

v.

AUGUST FINANCIAL PARTNERS, Au-
gust Management, Inc., a California
corporation, et al., Third–Party–Defen-
dants–Appellees.

No. 20431.

Supreme Court of New Mexico.

June 14, 1993.

Crider, Calvert & Bingham, P.C., David G. Reynolds, Albuquerque, Hatch, Allen & Shepherd, P.A., Steven S. Scholl, Albuquerque, for August Income Growth Fund VII.

Modrall, Sperling, Roehl, Harris & Sisk, Martha Brown, Kenneth L. Harrigan, Albuquerque, for August Management, Inc.

Irell & Manella, Sheldon Eisenberg, Paul T. Tsuchiya, Los Angeles, CA, for August Management, Inc.

## OPINION

RANSOM, Chief Justice.

On motion of P.S.G. Limited Partnership, we granted this interlocutory appeal, *see* SCRA 1986, 12–203, to decide the extent of damages PSG as successor lessor may recover as liquidated, contractual damages against sublessees of property on which the Radisson Inn was constructed in Albuquerque.

In 1980, PSG's predecessor in interest, Ever Ready Oil Company, leased its property to Gary Willey, doing business as Village Properties, for approximately $1500 per month. In 1984 Willey assigned the ground lease to Hotel Development Corporation, an entity in which he was the principal. HDC immediately entered into a real estate mortgage and security agreement to obtain a construction loan from ITT Commercial Credit Corporation. Ever Ready subordinated its fee and lease interests to ITT, but expressly excepted its right to ground lease rental payments from the subordination agreement. After its acquisition of the lease by assignment in January of 1985, PSG entered into an amended lease with HDC, allowing another corporation in which Willey was the principal, South–West Commercial Leasing Company, to assume the original lease and allowing HDC to become the sublessee of South–West—a novation with the effect, signifi-

cantly, that HDC was no longer in privity of contract with PSG. This agreement was expressly conditioned upon HDC's ability to sell the hotel to August Income/Growth Fund VII (AIGF VII). South–West charged HDC approximately $9000 per month for the sublease even though South–West continued to be obligated for only $1500 per month to PSG. The lease and the sublease both contained a liquidated damages clause for breach of the lease wherein liquidated damages in the same amount as the reserved rents would be due in monthly installments until the premises could be re-leased. HDC and AIGF VII entered into a purchase agreement for the sale of the hotel, and AIGF VII took assignment of the sublease from HDC. HDC and AIGF VII then negotiated a transfer agreement with ITT. Under the transfer agreement, the construction loan obligations of HDC were nonrecourse as against either PSG or AIGF VII, but both had the right to cure a default. PSG assented to the assignment and to the transfer agreement.

At this point, then, *only South–West had a contractual duty to make lease payments to PSG* under the amended lease, and *only HDC had a contractual duty to make mortgage payments to ITT* on the construction loan. AIGF VII stopped making the $9000 ground lease payments to South–West, and South–West then defaulted in making its $1500 payments to PSG. AIGF VII also failed to make mortgage payments to ITT as apparently required in the purchase agreement, and HDC defaulted in its commitment to ITT, resulting in the grant to ITT of a summary judgment of foreclosure against all parties. Just before foreclosure, after terminating South–West's leasehold interest, *PSG succeeded to the rights of South–West as sublessor under the sublease* that had been assigned by HDC to AIGF VII. This gave PSG privity of contract to sue AIGF VII for lost rents and liquidated damages of $9000 per month rather than for only $1500 per month that it could claim against South–West. Willey, South–West, and HDC all failed to answer the foreclosure complaint and PSG's crossclaim (under the lease)

against South–West. PSG crossclaimed (under the sublease) against AIGF VII for liquidated damages for lost rents over the balance of the lease term and for consequential damages resulting from loss of its property. PSG also sued AIGF VII's assignees—August Management, Inc. (AMI) and August Managers Associates (AMA). A foreclosure sale was held in October of 1990, the Order approving the sale was entered on January 1, 1991, and the redemption period expired on February 3, 1991.

In a partial summary judgment, the trial court limited PSG's potential damages against AIGF VII for lost rents to the date of the foreclosure sale and denied the claim for consequential damages. Since the only issue before the court was a question of law, the court must have determined that the foreclosure extinguished all liabilities arising after termination of the lease. We reverse the holding of the court on the legal issue, but we affirm the narrow decision denying consequential damages based on the sublease alone. Our reversal is based upon the liquidated damages clause. We hold that contractual damages were recoverable after termination of the lease, continuing until the end of the redemption period in February 1991.

*The issue.* The question on interlocutory appeal is: When the lessor of a subordinated ground lease is not a party to the mortgage, to what extent, if any, does the foreclosure of that mortgage limit the sublessee's liability to the sublessor for direct and consequential damages caused by breach of its contractual obligations under the sublease?

*Sublessee's position.* AIGF VII and codefendants AMI and AMA (collectively, "sublessee") argue, in short, that because the public foreclosure sale of the real estate securing ITT's senior lien extinguished both PSG's subordinate sublease and the status of PSG as landlord, all rights and obligations under the sublease were terminated and there is no factual or legal basis for a claim under the sublease. AMI and AMA also argue that a junior lienholder's entitlement to further rental payments is

cut off once a mortgagee takes possession and perfects its senior lien on the rents, regardless of the expiration of the redemption period. They cite *Boise Joint Venture v. Moore,* 106 Or.App. 83, 806 P.2d 707 (1991) (decided under Idaho law). "[O]nce its status as landlord terminated, BJV lost its right to rely on the agreement between the parties. Idaho law subordinates contract law to the common law landlord-tenant rules...." *Id.* 806 P.2d at 708. They also cite *Dover Mobile Estates v. Fiber Form Products, Inc.,* 220 Cal.App.3d 1494, 270 Cal.Rptr. 183, 186 (1990), which states:

> A lease which is subordinate to the deed of trust is extinguished by the foreclosure sale. A foreclosure proceeding destroys a lease junior to the deed of trust, as well as the lessee's rights and obligations under the lease. As stated in section 15.1 of the Restatement Second of Property, Landlord and Tenant (1977), "[i]f the sale of the landlord's interest is forced by one having a paramount title to that of the tenant, such as a mortgagee whose interest existed at the time the lease was made, the tenant's interest will be defeated by the sale." (*Id.* at p. 90 [cmt. h].)

*Id.* (citations omitted) (alteration in original).

■ *Contract rights distinguished from leasehold rights.* If PSG's claims were based only on its property rights flowing from privity of estate under the sublease, AIGF VII's arguments regarding extinguishment would be dispositive because the foreclosure action destroyed all possessory claims that were junior to the senior lien. *Dover* is not persuasive in the disposition of this case, however, because *Dover* was an action to recover rent based on the leasehold rights and not an action for damages based on contract provisions. This is a crucial distinction because in an action for rents the lease must be in force, but in an action for damages the lease may be terminated. The *Dover* court explained that because the lease had been terminated, there was neither privity of contract nor of estate between the lessee and the foreclosure purchaser and therefore no landlord-tenant relationship. *Id.* The

court did not discuss the contract rights of the original lessor and lessee and stated that its decision comported with the basic notions of priorities and notice—both property law concepts. *Id.*

■ To better understand the distinction between property rights and contract rights in a lease, it must be understood that a lease is both a conveyance and a contract. *See generally* 1 Milton R. Friedman, *Friedman on Leases* § 1.1 (3d ed. 1990) [hereinafter *Friedman on Leases*]. A lease is "both the conveyance of a protected possessory interest to the tenant and a contract specifying numerous rights and duties of the parties...." 2 Richard R. Powell, *Powell on Real Property* ¶ 221(2), at 16–11 (rev. ed. 1993). Two kinds of rights exist under a lease: property rights (which include the right to receive or sue for unreceived rents, the right to occupy the leasehold, and the reversionary right in the leasehold) and contract rights (which include the right to sue for breach of the various express and implied covenants, and the right to consequential damages resulting from breach of the lease contract).

It is apparent that before deciding whether a lessor of a subordinated lease is barred from seeking recovery for damages after a foreclosure action, a court first must determine what kind of action is claimed. If it is a property action for unpaid rent after the foreclosure or for possession of the property the claim is barred as a matter of law because of the termination of the lease by the foreclosure. If it is a contract action for damages for breach of a covenant or to enforce a liquidated damages clause, the claimant may be entitled to relief because, although the foreclosure terminates the property rights (and causes of action) under the lease, it does not vitiate the surviving contract claims.

*General Precedent.* In *Boise Joint Venture v. Moore,* 106 Or.App. 83, 806 P.2d 707 (1991), the landlord sought two remedies. The first was found by the court to be a property right claim for lost rents accruing after the termination of the lease. The second claim was based on a

contract right for consequential damages resulting from loss of the investment in the property caused by foreclosure. The determinative fact for the denial of the first remedy was that the contract provision on which the landlord based his right did not expressly survive the termination of the lease. Therefore, under Idaho law, once status as landlord terminated, the landlord lost its right to rely on the agreement between the parties. *Id.* 806 P.2d at 708. As Idaho law subordinates contract law to common law landlord-tenant rules, the court therefore had no agreement on which to award recovery for lost rents or lost profits after surrender and acceptance. There was no lease provision nor any other evidence indicating the parties agreed the landlord should recover its investment as consequential damages, so the court determined that the loss was not a foreseeable consequence of the failure to pay rents. In contrast, in *Rodeway Inns of America v. Alpaugh*, 390 So.2d 370, 371–73 (Fla.Dist. Ct.App.1980), the court affirmed the trial court's enforcement of a liquidated damages clause that survived the termination of the lease by its express terms and that required the defendant to continue making mortgage payments after eviction.

■ Sublessee, at oral argument, claimed that the liquidated damages clause was not intended to apply to termination by foreclosure, but this argument fails. The damages provided for in that clause arose upon default in the payment of rent. AIGF VII defaulted in the rent payments, the damages provision became operative, and the termination by foreclosure was a later event. The liquidated damages provision became effective upon default, not upon termination. The liability before foreclosure was for rent; after foreclosure, the liability was for damages. No party contends that the liquidated damages clause is otherwise ambiguous.

In his exhaustive treatise on leases, Professor Friedman explains that, if a lease does not contain a liquidated damages clause, the termination of the lease terminates the liability of the tenant that would otherwise accrue. This is true whether that termination is a result of tenant insolvency proceedings or termination by other means. 2 *Friedman on Leases* § 16.2, at 971; § 16.3, at 987. He states that *"Hermitage* and other cases are clear—after a lease has been terminated, the landlord's claim under a survival clause is not for rent, but for *damages."* 2 *id.* § 16.302, at 1009 (footnote omitted). The *Hermitage* case is a New York opinion by Chief Judge Cardozo who wrote, "After the tenant had been ejected in summary proceedings, the lease was at an end. What survived was a liability, not for rent, but for damages." *Hermitage Co. v. Levine*, 248 N.Y. 333, 333, 162 N.E. 97, 97 (1928). In another New York case, the lessee claimed that termination of the lease terminated it for all purposes because it annulled the relationship between landlord and tenant. The court held that termination of a lease does not terminate independent covenants designed to furnish security to the lessor for injury arising out of the tenant's breach. *Michaels v. Fishel*, 169 N.Y. 381, 382, 62 N.E. 425, 426 (1902).

Although no New Mexico case has discussed at length the difference between property and contract claims under a lease, in *Mitchell v. Lovato*, 97 N.M. 425, 640 P.2d 925 (1982), this Court affirmed the plaintiff's assertion that the termination of his lease by foreclosure did not destroy his right to collect damages for breach of express covenants in the lease contract. "[D]espite Mitchell's termination of the lease, he may still maintain an action for breach of covenants contained in the lease." *Id.* at 427, 640 P.2d at 927. In *Mitchell*, the lessor sought damages for breach of a terminated commercial lease. Specifically, he sought damages for breach of the express covenant not to transfer a liquor license and for breach of the express covenant to return the property in its original condition. As defendants AMI and AMA noted in their brief, Mitchell could not collect damages for future rent (which was a property right under the lease) because the lease had been terminated. *Id.* Further, however, Mitchell was denied damages for breach of contract only because he had not satisfied his burden of

proving damages with reasonable certainty. *Id.* at 428, 640 P.2d at 928.

■■■■ *Foreclosure does not affect contract rights that do not relate to property rights.* A foreclosure action is one in which property rights concerning land are determined. In contrast, PSG's claims are all based upon its contract rights for damages against AIGF VII, and none of these rights were destroyed by the property foreclosure action. In fact, PSG expressly excepted its rights to ground lease payments when it subordinated its property rights to the mortgage. Subordination agreements are used to adjust the priorities between commercial tenants and the mortgagee of the real estate. Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law* § 12.9, at 911 (2d ed. 1985). A lease may be terminated in a foreclosure, and as a result, the lease provisions relating to the property rights are extinguished. However, independent contract provisions relating to the liabilities of the parties may survive. *See Speckner v. Riebold,* 86 N.M. 275, 277, 523 P.2d 10, 12 (1974) (explaining that foreclosure judgment only operates to declare the property rights of the parties in the mortgaged premises); *Cal–Am Corp. v. Spence,* 659 F.2d 1034, 1037 (10th Cir.1981) (construing New Mexico law and stating that all general rules regarding leases are subject to the overriding proposition that parties are at liberty to control the terms of their relationship by contract); *Burns Trading Co. v. Welborn,* 81 F.2d 691, 695 (10th Cir.) (stating that the general rule is that a tenant is not liable for damages arising after termination of a lease, but parties may contract otherwise), *cert. denied,* 298 U.S. 672, 56 S.Ct. 936, 80 L.Ed. 1394 (1936); *Central Trust Co. v. Wolf,* 255 Mich.. 8, 237 N.W. 29, 31 (1931) (parties to lease may contract that provisions of the lease for damages due to default shall survive the restitution of the premises). A foreclosure judgment has no effect upon contract rights that survive the termination and do not affect the foreclosing party. The contractual rights and obligations arising from leases are governed by the law of contracts. *See Boss Barbara, Inc. v. Newbill,* 97 N.M. 239, 241, 638 P.2d 1084, 1086 (1982) (a lease is a contract and is governed by general contract principles of good faith and commercial reasonableness).

■■■■ *Clauses for liquidated damages survive.* Despite the fact that general terms of a lease are no longer operative upon termination, clauses for liquidated damages survive.

> The obligation of the tenant to pay rent does not arise for any period after the lease is terminated. *The parties to the lease may provide that the tenant will continue to make payments in an amount equal to the rent he had been paying, or in some other amount, when the lease is terminated prematurely. Under such an agreement, the landlord may collect these payments, but the payments due will not be rent . . . .*

Restatement (Second) of Property, Landlord & Tenant § 12.1 cmt. g, at 389 (1977) (emphasis added). "A survival clause may apply during the existence of a lease, as well as thereafter." 2 *Friedman on Leases* § 16.303, at 1009. AIGF VII clearly agreed to a liquidated damages clause, and the trial court erred in granting partial summary judgment denying PSG's claim for liquidated damages.

■■■■ *Application of the liquidated damages clause.* Paragraph 25(e) of the sublease provides:

> Tenant . . . shall also pay Landlord as liquidated damages, for the failure of Tenant to observe and perform Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the lease or leases of the Demised Premises for each month of the period which would otherwise have constituted the balance of the term of the lease. . . . Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. . . . Landlord agrees to use its best efforts to mitigate all damages and to relet the Demised Premises in the event of any default specified herein.

The liquidated damages clause in every lease and sublease in this case is limited by the covenant that the "[l]andlord agrees to use its best efforts to mitigate all damages *and to relet the Demised Premises* in the event of any default specified herein." (Emphasis added). When PSG failed to cure the mortgage default and the foreclosure resulted in termination of PSG's leasehold estate, PSG could no longer perform that covenant. The clause providing that "[a]ny such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease" indicates that the intent of the parties was not that the total rents due under the lease became due upon termination. Therefore, damages under the liquidated damages clause must be limited to the rents reserved to the date PSG could no longer relet the premises, or February 3, 1991. This was the date that the foreclosure sale became final, and PSG could no longer cure the default and exercise its right of redemption. *See Plaza Nat'l Bank v. Valdez*, 106 N.M. 464, 465, 745 P.2d 372, 373 (1987).

*Consequential damages.* Having determined that PSG has a valid contract claim for liquidated damages, we now turn to the question of whether PSG has a claim against AIGF VII for consequential damages arising either from the breach of the express covenant to return the leased property or from any implied covenant to maintain PSG's reversionary interest. Section 8(e) of the sublease provided:

> On the last day or sooner termination of the lease, tenant shall quit and surrender the Demised Premises, and the buildings and permanent improvements then thereon, broom clean and in good condition and repair (ordinary wear and tear excepted).

PSG claims that this provision requires return of the property to it upon termination of the lease and that even if it does not, damages for loss of the property are nonetheless recoverable as consequential damages.

■ *The non-recourse provisions.* Sublessee stands on the fact that the parties agreed that the mortgage obligations were nonrecourse against AIGF VII and that neither the sublease nor any other written contract ever imposed any obligation on the subtenant to prevent foreclosure on the mortgage. Under nonrecourse provisions in the transfer agreement, neither AIGF VII nor PSG had an obligation to cure any default by HDC, though AIGF VII made the mortgage payments and both had the right to cure. Sublessee also claims that by voluntarily making its interests in the property subordinate to the mortgage, PSG assumed the risk of losing that interest if it allowed the property to go to foreclosure. It further claims that it satisfied section 8(e) of the sublease by surrendering the premises to the foreclosure purchaser.

The contract claim for consequential damages for loss of the reversionary interest in the *fee* based on a covenant to pay ground rents can only be made against South–West, which held the ground lease and was ultimately responsible for returning the fee to PSG. Neither South–West nor PSG evicted AIGF VII; nor did PSG cure the default in mortgage payments. When the termination of the sublease occurred by operation of law, AIGF VII was obliged to vacate the premises and surrender them to ITT because the sublease was no longer in effect.

*Without covenant to preserve the reversionary estate, consequential damages not foreseen.* There were no provisions in the sublease for the tenant to make mortgage payments, and none for tenant's failure to do so. The parties could have agreed to some sort of liquidated damages agreement, as they did for failure to pay rent, but they did not. The failure of AIGF VII to pay ground rents to South–West did not result in foreclosure of HDC's mortgage. The mortgage payments and mortgage foreclosure were contemplated by neither an express nor an implied term of the sublease. "[C]onsequential damages must be damages that were or should have been reasonably contemplated by the parties." *Terrel v. Duke City Lumber Co.*, 86 N.M. 405, 424, 524 P.2d 1021, 1040 (Ct.App. 1974), *aff'd in part and rev'd in part on*

*other grounds,* 88 N.M. 299, 540 P.2d 229 (1975). Under these circumstances, we will not imply a covenant to preserve the reversionary estate upon the sublessee.

 *Third-party beneficiary claim preserved but not decided.* At oral argument, PSG raised a theory of recovery for consequential damages against AIGF VII based on PSG's position as third-party beneficiary to the purchase agreement between HDC and AIGF VII, wherein AIGF VII did expressly covenant to pay the mortgage payments. It should be noted that in its response to the motion for summary judgment, PSG alluded to the fact that AIGF VII was "further obligated to see that the land which PSG owned and which had been subordinated to ITT's mortgage, along with all buildings and improvements, were returned to PSG as soon as the lease terminated." PSG also requested that this Court limit its decision on AMI/AMA's Motion for Summary Judgment to the only issue raised—whether the mortgage foreclosure absolved AIGF VII of any liability for damages for breach of the sublease. In its response to the motion for summary judgment, PSG noted that there were factual issues as to the intent of the parties on the issue of preservation of the reversionary interest. We believe that these objections preserved PSG's right to raise that theory of recovery and to go forward with proof. PSG is not precluded from raising at trial its theory of recovery for consequential damages based on its status as third-party beneficiary to the purchase agreement.

 *Conclusions.* For the above reasons, we reverse the district court's grant of partial summary judgment and hold that while foreclosure of a mortgage does terminate all junior lease rights and obligations for future rent and for possession of the mortgaged property, it does not terminate liability for breach of express or implied covenants, prevent enforcement of independent liquidated damages clauses, or eliminate consequential damages for breach of the underlying contract for a lease or sublease. We further hold that AIGF VII and its assigns are liable for the amount agreed to in the liquidated damages clause. That amount is the reserved rents which were to be received as liquidated damages until February 3, 1991. We remand this issue to the district court for evidence and a finding as to the exact amount. We affirm the district court's decision denying PSG's claim for consequential damages based upon the sublease and remand to the trial court for further disposition.

**IT IS SO ORDERED.**

FRANCHINI and FROST, JJ., concur.