353 P.2d 406

H. J. HANNY and Margaret Hanny, husband and wife; Robert G. Routson and Ellen R. Routson, husband and wife; Howard E. Averett and Marie E. Averett, husband and wife; Glenn H. Webb and Edna V. Webb, husband and wife; Will A. Dick and Edna Fern Dick, husband and wife; Lloyd Grover Edwards and Avanell Ellen Edwards, husband and wife; Albert J. Mammen, also known as A. J. Mammen, and Beulah B. Mammen, husband and wife; and Ira A. Gatliff, a widower, Plaintiffs-Appellants,

v.

SUNNYSIDE DITCH COMPANY, a corporation, Junia Thorson, a widow, and Wallace W. Laird, individually and as directors of said corporation, Defendants-Respondents.

No. 8777.

Supreme Court of Idaho.
June 10, 1960.

272

---

Charles F. Reddoch, Charles S. Stout, Boise, and D. L. Carter, Weiser, for appellants.

Donart & Donart, Weiser, for respondents.

SCOGGIN, District Judge.

Sunnyside Ditch Company, Limited, was incorporated February 16, 1895, the purpose of its formation being to build, construct and maintain ditches, flumes, reservoirs, and laterals for the purpose of diverting water from Weiser river, in Washington county, Idaho, for irrigating lands of the individual stockholders. The capital stock of the corporation was established at eight thousand dollars, divided into one hundred and sixty shares. At the time of the incorporation (which was for fifty years) one hundred and six shares of stock had been subscribed, the names of the subscribers and numbers of shares subscribed for by each being set out in the articles of incorporation.

Prior to the expiration date of the above corporation and on December 19, 1941, Chester Thorson, Wallace Laird, and George Chadwick formed a non-profit irrigation corporation to be known as Sunnyside Ditch Company; the objects and purposes of such corporation being, generally, to acquire all the assets of the Sunnyside Ditch Company, Limited; to operate the cánal system theretofore operated by said Sunnyside Ditch Company, Limited; to appropriate additional waters or natural streams; to operate the canal system; to acquire rights of way, etc.

December 1, 1947, the corporate charter of the Sunnyside Ditch Company was forfeited for failure to file its annual statement with the Secretary of State, and its corporate charter was not reinstated until March 8, 1954; in the meantime, the officers of said corporation continued to conduct the affairs of said corporation. The minute records of said corporation prior to 1950 have become lost, and the minutes kept since that time are extremely brief; this also appears true as to the stock records. It appears that between 1895 and 1950 the corporation acquired at least two shares of stock from nonpayment of assessments or otherwise, leaving 104 shares issued and outstanding.

Said Sunnyside Ditch Company owns and operates what is known as the Sunnyside canal, which is approximately eight miles long. Plaintiffs are water users along the lower three miles of said canal, below what is commonly referred to as Frazier gulch.

Prior to July 26, 1950, Chester Thorson owned twenty-one shares of the capital stock of said corporation and between that date and October 11, 1950 (as shown by Exhibits 6, 7, and 8) he acquired an additional forty-six shares. Mr. Thorson paid $50 per share to the company, and the money therefrom was used by the corporation for construction, maintenance, and operation of its canal and irrigation system.

Mr. Thorson acquired storage water in the Crane creek reservoir, installed a pump in the Sunnyside canal, and irrigated between nine and eleven hundred acres of land owned by him above the canal by means of said pumping system. Other individuals acquired Crane creek reservoir water and have also installed pumps and pumped said water to lands above the canal.

Plaintiffs complain of Thorson's acquisition of said forty-six shares of stock and allege he acquired such additional stock with the design, intent and purpose of controlling said canal and manipulating the board of directors to his personal gain and advantage, and that the purchase of said stock by him was contrary to law, illegal, and void; they further complain that Thorson and his widow and successor in interest, Junia Thorson Jones, have allowed large quantities of waste water to accumulate and find its way by force of gravity into gulches and draws which intersect, cross, or empty into the Sunnyside canal, causing the banks to be cut and washed out, filling the canal with dirt and debris, causing the canal to overflow, hindering and impeding the operation of said canal, and damaging the plaintiffs' properties. Plaintiffs also complain that Thorson and the other directors have for many years refused to allow or permit the expenditure of any funds of the corporation for the maintenance and upkeep of the last three miles of said canal (along which

three miles plaintiffs own property) or to do any work thereon or repair or clean it, at the same time levying excessive assessments against them for use in widening, deepening, enlarging, and maintaining the upper part of said canal for the benefit of said Thorson. Plaintiffs ask that the stock certificates acquired after 1950 from the company for its long unissued treasury stock be canceled and the voting rights of Mr. Thorson's successor in interest be limited accordingly; that Junia Thorson Jones be restrained and enjoined from permitting waste water to waste down from the upper lands into said Sunnyside canal, that a watermaster be appointed, and for damages. Defendants are Sunnyside Ditch Company and Junia Thorson and Wallace W. Laird, individually and as directors of said corporation.

The district court entered findings of fact and conclusions of law favorable to the defendants and ordered that plaintiffs take nothing by virtue of their action; and the plaintiffs have appealed from such judgment.

Appellants set out thirty-six specifications of error; however, in their briefs and oral argument they stated there are only two major issues involved in this case, namely, (1) the status of the long unissued treasury stock which was issued to Chester Thorson, and (2) the status of the last

three miles of the ditch—whether that portion of the ditch is a lateral or a part of the canal system and entitled to the same treatment, so far as stockholders are concerned, as the upper five miles of said canal. We will, therefore, discuss first the question of the long unissued stock.

The articles of incorporation of Sunnyside Ditch Company, adopted in December, 1941, provided in part as follows:

"Section 2. (Article III) That this corporation is organized for the purpose of acquiring the assets of Sunnyside Ditch Company, Ltd., a corporation whose franchise is about to expire and that stock in this corporation will be issued to each stockholder now owning stock in the Sunnyside Ditch Company, Ltd., to the end and purpose that each stockholder of said Sunnyside Ditch Company, Ltd., may acquire in this corporation the same number of shares and of the same par value as the shares of stock held by him in said Sunnyside Ditch Company, Ltd., and the surrender or transfer to this corporation by each stockholder of the Sunnyside Ditch Company, Ltd., of his shares of stock in that corporation will be accepted by this corporation as full payment for the shares of stock so to be issued

to the present stockholders of Sunnyside Ditch Company, Ltd.;"

Section 1 of Article IV of the by-laws, adopted December 31, 1941, is as follows:

"Section 1. The President and Secretary are authorized to issue stock in this corporation to any stockholder who shall turn to them shares of stock of the Sunnyside Ditch Company, Ltd., or proof of loss thereof, in an amount equal to the shares of the said Sunnyside Ditch Company, Ltd., that shall have been turned to them, and they are authorized to sign said certificates."

Clearly the articles of incorporation and by-laws prohibited the issuance of further stock, and its issuance was contrary to said articles of incorporation and by-laws.

■ The respondents argue that the purchase of said stock was for the sole purpose of enabling Thorson to conduct additional water through the Sunnyside canal and should therefore not be questioned. We do not consider this a valid argument in view of the above quoted articles and by-law requirements limiting the sale of said treasury stock. Further, for the purpose of argument admitting there had been treasury stock which could have been sold, it would not be subject to sale in this manner, but its sale would be limited as pointed out by this court in the case of Titus v. Paul State Bank, 32 Idaho 23, at page 26, 179 P. 514, 515:

"If a part of the authorized capital stock of a corporation remains unissued, in the absence of a statute to the contrary, each stockholder has a right to purchase such proportion of it, when the issuance and sale thereof are directed, as his holdings bear to the stock then outstanding."

Also, I.C. § 30–120, subdivision 6.

This is also true in the light of I.C. § 30–142, which points out that directors stand in a fiduciary relation to the corporation, and, hence, to the stockholders, and any attempt on the part of one of the directors to acquire property of the corporation for personal profit or interest would be in violation of this section of the law. This would be particularly true here when one takes into consideration the restrictive articles of both the charter and by-laws of this corporation.

Hence, the sale of the treasury stock was void because of the manner in which the director obtained the stock and because it was not offered to the other stockholders of record. We reverse the holding of the district court that Chester Thorson legally acquired said stock and that the stock was legally sold to him, and hold that the stock was illegally issued.

As to the second point, the status of the lower three miles of the Sunnyside canal, or that part below Frazier gulch, the trial court found that the lower three miles

have the status of a lateral only and con-
cluded the defendants have no obligation to
supervise the distribution of water through
a watermaster or otherwise to the users
who divert water from the lower three
miles of said ditch and that the company
was not required or obligated to maintain
or perform any labor on or pay any part of
the expenses and maintenance and opera-
tion of said lower three miles.

The evidence as to whether the
lower three miles of the ditch below Fraz-
ier gulch is a part of the canal is con-
flicting. The testimony of the witnesses
is preponderately to the effect that the
defendant company has never maintained
or operated that part of the system, and
has always treated it as a lateral. We
therefore confirm the district court's find-
ing that the lower three miles of said
ditch, that is to say, that part of the ditch
below Frazier gulch, has the status of a
lateral only.

There is the further problem here pre-
sented by the evolution, so to speak, of
Sunnyside Ditch Company, Limited. In
1895, when organized, it was for the spe-
cific purpose of conveying water from
the Weiser river to the lands of the re-
spective incorporators. The ditch was
built to convey approximately 1,300 inches
and was more than ample to convey the
water in which all shared, including the
early flood water. From the time of the
original incorporation until supplemental
waters were acquired in the Crane creek
reservoir there was no problem particu-
larly because each stockholder held stock
in direct proportion to the water used by
him and because all water was then being
conveyed by gravity from the Weiser river
to its place of use. This condition con-
tinued until the Crane creek reservoir was
built, at which time the owners of stock
in the Sunnyside Ditch Company acquired
water in Crane creek reservoir to sup-
plement their water rights from Weiser
river. Water was not obtained in the
Crane creek reservoir in the same propor-
tion as the prior stock and water rights,
some having more land and some wanting
more water so that they would be safe even
in the heaviest drought years. As new
land was put under irrigation by the stock-
holders, in order to convey the Crane creek
water, the Sunnyside canal was enlarged
from year to year to carry this additional
water which was released down Crane
creek into the Weiser river above the point
where the Sunnyside ditch diverted the
water from the Weiser river. Hence,
when there was insufficient water in Weiser
river, sufficient water was released from
the Crane creek reservoir to supplement
the Weiser river's natural flow. This con-
dition prevailed without seemingly caus-
ing any particular trouble, at least that
could not be resolved by the stockholders,
until the pumps were introduced into the

system, whereby water was raised from the canal on to higher lands, and particularly in approximately 1950 when Chester Thorson installed one pump sufficient to irrigate all the tillable land in approximately two sections owned by him above the canal. This increased the amount of irrigated land approximately one-third and increased the water necessarily conveyed through said canal approximately one-third. From that time on the Sunnyside Ditch Company has had a strong protesting minority represented primarily by those users below Frazier gulch. There is no question from the evidence and the general history as shown above but that they have grounds to protest the general operation for several specific reasons, namely:

1. There has never been an adjustment in the stock as to acres irrigated or inches of water conveyed per share of stock since 1895, but there has in fact been a material change in the ownership of water owned by the respective stockholders and clearly disproportionate to the water originally owned by them when the company was first incorporated and stock issued to them proportionately.

2. It is clearly shown that the water applied to those lands above the ditch has been applied in such a manner that large quantities of waste water accumulated and flowed into Sunnyside canal, washing and cutting the banks, causing them to overflow and causing plaintiffs added expense of maintenance; and this particularly includes the lower three miles of said canal below Frazier gulch.

3. There are some seven or eight spillways along the canal, as well as a diversion works at the mouth of the canal, all of which have had to be enlarged from their original size to a size sufficient to carry approximately three times as much water. This in turn has enlarged the rights of way for the same through the lands of the respective parties. This is also true of those stockholders on the lower three miles.

4. When the Thorson pumps are set in motion a great reduction in the flow of water in the canal below the pumps occurs, and when the pumps are shut off a large head of water surges down the canal. This causes additional expense and damage to the protesting minority below Frazier gulch.

The foregoing recitals of facts in some particulars are in harmony with, and in other particulars in conflict with, the findings of the trial court. We set them out, not to upset findings supported by competent evidence, but to illustrate the necessity for reopening, and further consideration by the trial court, of the issues involved.

The judgment is reversed and the cause is remanded to the district court with directions to reopen the case; to permit the

parties to offer additional evidence if they or either of them so desires; to take such further evidence as the court may deem necessary; thereafter to make and enter findings, conclusions and judgment determining the amount and character of the water rights of each stockholder or user of the Sunnyside Ditch Company canal, and the number of acres of land irrigated by each user with water carried through the canal; to provide for the levy and collection of assessments, to cover the cost of operation and maintenance of the canal, from each user in proportion to the amount of water carried through the canal, so that each will pay his share of the cost of operation and maintenance in proportion to the benefits he receives; to provide for additional assessments, against those using pumps for the irrigation of lands above the canal, reasonably necessary to pay the additional maintenance expense caused by waste water from said land to the canal and its spillways or other works, and to the lateral and its spillways and works below Frazier gulch; to provide for the return to the treasury of the Sunnyside Ditch Company of the treasury stock illegally issued as hereinbefore stated; to provide for an equitable reimbursement to the purchaser of the aforesaid treasury stock should the court find that any of the purchase price received by the company therefor was expended by the company for the benefit of the stockholders generally, over and above the amount necessarily expended to increase the capacity of the canal, and to maintain it, in order to carry the additional water owned by the purchaser of such treasury stock; and to require and supervise any reorganization, amendments to articles or by-laws, of the Sunnyside Ditch Company, which the trial court may find necessary or desirable to fully settle the controversy between the parties in an equitable manner, and in conformity herewith, and such as will preserve the rights and equities of any users or stockholders in said canal, not parties hereto, or, if need be, to join such users and stockholders, as parties. I.R.C.P. 19(a), 19(b).

Costs to appellants.

TAYLOR, C. J., and KNUDSON and McQUADE, JJ., concur.

PORTER, C. J., did not participate.