Ray W. CHRISTENSEN, Trustee, Appellant,

v.

Robert T. FELTON and Jean Wilson Felton, Appellees.

No. 18267.

United States Court of Appeals Ninth Circuit.

July 16, 1963.

Rehearing Denied Sept. 24, 1963.

Brown & Thayer, Robert M. Brown, Spokane, Wash., for appellant.

Felton & Bielenberg, Philip E. Peterson, Peterson & Brady, John F. Brady, Moscow, Idaho, for appellee.

Before ORR, MERRILL and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

The trustee in bankruptcy of McDonnell Seed Company, a Washington corporation, appeals from a decision of the district court reversing an order of the referee in bankruptcy which disallowed certain creditors' claims. We conclude that the order of the district court must be affirmed.

McDonnell Seed Company, a corporation wholly owned by one Leo McDonnell, was desirous of acquiring the stock of another seed company, Washburn Wilson Seed Company, an Idaho corporation. Following some examination of the books and assets of Washburn Wilson, a form of contract was drawn under which an individual stockholder was to agree to sell his stock to McDonnell Seed Company for a cash price, payable 29% down and the balance in three equal annual payments. The stockholder's stock certificates, endorsed in blank, were to be delivered to a bank as escrow agent, to be delivered in turn to the McDonnell Seed Company upon full payment of the purchase price. The contract contained the following provisions pertinent to this matter:

"DELIVERY OF PAPERS: On full payment of the purchase price the escrow agents shall transfer said stock to McDonnell Seed Co., purchaser, with all necessary federal and state transfer tax stamps attached. In the event of default by purchaser, all rights in stock shall automatically terminate and the portion of the purchase price heretofore paid by the purchaser shall be retained by seller in full satisfaction of all damages caused by purchaser's default and as reasonable rental value."

\*    \*    \*    \*    \*    \*

"TERM: Notwithstanding anything herein contained to the contrary, this agreement shall terminate and all rights and obligations hereunder shall cease upon the happening of any of the following events: (a) the adjudication of either the seller [sic: the parties are agreed and the referee found that this is a scrivener's error and should read 'purchaser'] or Washburn Wilson Seed Co. as a bankrupt, the execution by the seller [sic, read 'purchaser'] or Washburn Wilson Seed Co. of any assignment for the benefit of creditors or the appointment of a receiver for either of said companies. (b) the voluntary or involuntary dissolution of either company."

\*    \*    \*    \*    \*    \*

"DELIVERY OF PAPERS AND DEFAULT: Time shall be the essence of this agreement. Upon the faithful performance of all terms of this agreement by the purchaser and payment by it of all sums due hereunder, said escrow holder is hereby directed and empowered to deliver to the purchaser the shares of stock and all of the papers herein referred to or connected with this transaction, provided however, that if the purchaser shall fail to keep any of the covenants or agreements herein contained to be kept or performed by it, including the payments herein specified, the seller may bring an action in any competent court for the recovery of the balance

of the purchase price then due, or at his or her option, terminate this agreement and take possession of the stock immediately upon the declaration of a forfeiture of this agreement by him and in the event of such declaration of forfeiture all payments made under the terms hereof shall be retained by seller as liquidated damages for the breach of this contract. Provided, however, that before this contract may be declared forfeited by the seller and thereby terminated the seller shall give ten days notice in writing to the purchaser, delivering such notice to the purchaser or any officer or director thereof, personally or by registered mail, advising said purchaser in detail wherein it has failed to comply with or perform the terms of this agreement and what act or failure upon its part constitutes a default hereof. In the event such failure to perform or default upon the part of the purchasers is complied with within the period of ten days given by such notice, then no forfeiture or termination of this agreement shall be declared." (The numbering is ours, for convenience of reference.)

The contract was executed by appellees, who were stockholders, in October, 1959, and the escrow was duly opened and their certificates deposited. The McDonnell Company was adjudicated a bankrupt on October 13, 1960, pursuant to a voluntary petition in bankruptcy; Washburn Wilson was adjudicated an involuntary bankrupt on October 24, 1960. Appellees' claim is for the balance of the purchase price. Since the trustee does not argue to the contrary, we assume that a contract providing for this remedy (as paragraph 3 does) is enforceable under Idaho law.

Relying on the language appearing in paragraph 2, the referee held that the contract was automatically terminated by the bankruptcies, and that consequently the stockholders of Washburn Wilson had no claim against the McDonnell Company. Upon review, the district court held that the provisions relied upon by the referee were void as against public policy. It did so on the ground that if the clause were so enforceable, the McDonnell Company could pirate the assets of Washburn Wilson, thereby rendering that company bankrupt, and the security (the stock held in escrow) worthless and, at the same time and by the same means, defeat the stockholders' right to be paid. We need not and do not hold that the provisions of paragraph 2 are void for all purposes, but we agree that they cannot be applied in favor of the McDonnell Company or of the trustee as its successor in this case.

The creditors offered testimony showing that immediately after the execution of the contract, and pursuant to its terms, the officers and directors of the McDonnell Company were elected officers and directors of Washburn Wilson. They also showed that during the ensuing year these persons systematically looted the assets of Washburn Wilson. The evidence shows that, at the time the contract was made, Washburn Wilson's current assets were about two-and-one-half times its current liabilities, and that, at the time of its bankruptcy, it was hopelessly insolvent. This was brought about largely by pledging seed purchased by Washburn Wilson to secure the debts of the McDonnell Company and by obtaining bank advances on drafts and trade acceptances which were thereafter dishonored by the drawees to the tune of some $350,000.

Most of this evidence was excluded by the referee by reason of his construction of the language of paragraph 2. However, acting under rule 43(c) of the Federal Rules of Civil Procedure, he permitted the appellees to place upon the witness stand persons, including disinterested witnesses, whose testimony fully supports the foregoing general statements of fact. The trustee's counsel did not elect to cross-examine them, nor did he offer any contrary testimony, apparently preferring to stand upon his construction of the agreements. Our read-

ing of the testimony indicates that it would not in any event be possible for him to contradict the showing that was made.

It is claimed that the district court had no right to consider this testimony. We disagree. The very purpose of placing it in the record was to enable the creditors, in the event of an adverse ruling as to the construction of the agreement, to present to the district court a full record of the facts upon which they relied. The district court, having concluded that the evidence was admissible, could have remanded the matter to the referee for the taking of further evidence in the light of the court's construction of the agreement. However, when it appeared to the court from the testimony that the facts were such as to warrant a holding that paragraph 2 could not be relied upon as a defense, it was not compelled to require the referee to go through the futility of a further hearing. It could instead accept the testimony and decide the issue in the light of the facts that that testimony revealed. (See General Order 47, following 11 U.S.C.A. § 53; Carter v. Kubler, 1943, 320 U.S. 243, 64 S.Ct. 1, 88 L.Ed. 26).

The three paragraphs are inconsistent on their face. Presumably, they were inserted by the draftman at the request of one or the other of the parties, and he made no effort to reconcile them. The record does not show who wanted what; the scrivener does not recall. We must reconcile them if we can. We hold that paragraph 2 cannot defeat appellees' rights when, as here, the bankruptcies arise from culpable misconduct on the part of the officers and directors of the McDonnell Company. The testimony shows that to sustain the application of the contract which the referee adopted would permit the bankrupt to profit by its own wrong by wrecking the purchased corporation and diverting to its own use much of those assets, these being what gave the stock value and, having done so, to say to the selling stockholders: "Your company is now bankrupt, as are we, and you have agreed that under these conditions we need not pay you." We need not and do not decide what the effect of the language in controversy would be if bankruptcy had been brought about by economic conditions or by mere business bad judgment. All that we hold is that under the circumstances revealed by this record, the trustee, as successor to the bankrupt, cannot take advantage of this provision of the agreement.

We think it clear that for the purposes of this case the trustee stands in the shoes of the bankrupt. (See Schultz v. England, 9 Cir., 1939, 106 F.2d 764) The question here is as to the validity of a defense asserted on behalf of the bankrupt, to a claim upon a contract made by it. The court, sitting in bankruptcy, applies equitable principles. (Pepper v. Litton, 1939, 308 U.S. 295, 303–304, 60 S.Ct. 238, 84 L.Ed. 281) As applied by the referee in this case, the provision of the contract upon which the trustee relies would operate as a condition, and would have the effect of terminating the obligation of McDonnell Company and the rights of the appellee-creditors. It has long been good contract law that if the happening of such a condition is caused by the conduct of the promisor it will not terminate the duty of the promisor. (Restatement, Contracts § 302 (1932) and cf § 307) This is but an application of the established principle that equity will not permit one to rely on his own wrongful act. (Deitrick v. Greaney, 1940, 309 U.S. 190, 196, 60 S.Ct. 480, 84 L.Ed. 694) (Also see 3A Corbin, Contracts § 748 (1960); 5 Williston, Contracts § 677 (3d ed. 1961)) We think that the principle is peculiarly appropriate here where the purchasing corporation caused its own officers and directors to become the officers and directors of Washburn Wilson and thereby assumed, in relation to the selling stockholders, the present creditor-appellees, a fiduciary relationship. (See Idaho Code Ann. § 30–142 (1948); Hanny v. Sunnyside Ditch Co., 1960, 82 Idaho 271, 353 P.2d 406)

■ No contention was made, here or below, that the provisions of paragraph 1, quoted above, can defeat the claim. In any event, while those provisions, if read literally, are clearly inconsistent with paragraph 3, we think that they must be read with paragraph 3. When so read, we think that the second sentence of paragraph 1 must be considered to be solely for the benefit of appellees, that it may be waived by them, and that it has been waived by their assertion of rights under paragraph 3.

■ The fact, if it be a fact, that these creditors may have a cause of action, either in their own right or in the right of their corporation, against the individual officers and directors who destroyed it, is not a bar to the allowance of their claim in this bankruptcy. (See Collier, Bankruptcy § 63.03(2) (14th ed. 1961))

Affirmed.

On Petition for Rehearing.

Before ORR, MERRILL and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

In his petition for rehearing appellant argues that we have gone too far in that portion of our opinion in which we held that the District Court could properly consider and rely upon the evidence that was offered before the referee and excluded by him, but was recorded pursuant to rule 43(c) of the Federal Rules of Civil Procedure. We think that in this appellant is correct.

■■ We do not think that, where a ruling has been made excluding evidence, the party who succeeded in obtaining the ruling is obligated, when his opponent's witnesses are then permitted to testify under rule 43(c), either to cross-examine or to offer contradicting evidence if he has any, unless the court directs that he do so. We do not think that rule 43(c) requires a full-scale trial as to the excluded matter; rather, its purpose is to afford a substitute for an offer of proof stated by counsel. Its use will often give the reviewing court a better basis on which to decide whether the ruling excluding the evidence was correct. It may be that in an appropriate case the court may require the other party to cross-examine and to offer conflicting evidence, if he has any, so as to make the record complete. In such a case, the court could make findings for the benefit of the reviewing court. This could avoid the time and expense of a new trial, if the ruling excluding evidence were held to be erroneous. But, we do not think that these things are required in every instance where the rule is used, or that a party loses rights by failing to cross-examine or offer evidence when not directed to do so. This could make rule 43(c) a trap for counsel; it is so great a departure from usual trial practice that we think we should not read it into the rule.

■ The reviewing court, whether the trial court or this court, must consider the record made under rule 43(c) in order to determine whether the evidence should have been received, but we do not think that it should accept the evidence as establishing the facts that it is offered to prove, except where there has been a trial of that issue and a resolution of it by the trier of fact. Here, since we have determined that the applicability of the language in paragraph 2, set out in our prior opinion, depends upon the excluded evidence, and that such evidence, if accepted, would preclude the application of that paragraph, we think that the appellant should have an opportunity to meet that evidence if he can.

The order of the District Court is vacated and the matter is remanded to that court for further proceedings consistent with our prior opinion as modified by this opinion. The petition for rehearing is denied.