# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2482

_____

David Longaker

*Plaintiff - Appellant*

v.

Boston Scientific Corporation and
Guidant Sales Corporation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: December 11, 2012
Filed: April 26, 2013

_____

Before WOLLMAN, BYE, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

David Longaker appeals the district court's[1] dismissal of his breach of contract and retaliation claims against Boston Scientific Corporation and Guidant Sales

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

Corporation (collectively, Boston Scientific).[2]  We affirm.

## I.  Background

In October 2009, Longaker entered into a three-year Employment Agreement (Agreement) with Boston Scientific to work as a sales representative.  Pursuant to the Agreement, Boston Scientific paid Longaker an annual base salary and an annual base commission, an amount below which Longaker's commissions would not drop.  The Agreement guaranteed Longaker these payments unless he quit or was terminated for certain reasons.  The Agreement provided that Minnesota law governed any disputes relating to the contract and identified Minnesota as the forum for the resolution of such disputes.  While employed by Boston Scientific, Longaker lived and worked exclusively in California.

On September 30, 2010, Longaker filed for Chapter 7 bankruptcy.  On October 1, 2010, Boston Scientific terminated Longaker's employment.  In February 2011, Longaker filed suit against Boston Scientific in California state court, asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, and retaliatory discharge in violation of California law.  Boston Scientific removed the case to the United States District Court for the Northern District of California and filed a motion to dismiss for improper venue, which was granted based on the Agreement's forum selection clause.

In January 2012, Longaker filed suit in the United States District Court for the District of Minnesota, reasserting his breach of contract claim and adding a claim for retaliation in violation of the Minnesota Human Rights Act (MHRA).  Boston Scientific moved to dismiss Longaker's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Longaker lacked standing to bring

---

[2]Guidant Sales Corporation is a wholly-owned subsidiary of Boston Scientific.

either claim, that judicial estoppel barred the breach of contract claim, and that the statute of limitations barred the MHRA retaliation claim.

Near the beginning of the hearing on the motion to dismiss, the district court asked whether Longaker's MHRA retaliation claim remained viable and whether Longaker continued to assert it. Longaker's attorney replied:

> What I'm proposing is that I could amend the complaint, which seems consistent with what defendants want, I could amend the complaint to bring the retaliation cause of action under California law.

The district court explained that it was unlikely that Boston Scientific would consent to Longaker amending his complaint at that juncture of the case.

Longaker's attorney and the district court resumed this discussion near the end of the hearing:

> Attorney: Okay. So--so, again, if--if there is a ruling that [Longaker] cannot pursue his claim under the MHRA, I think it's extreme to conclude that he can't pursue his retaliation claim under any body of law, so I would argue that if Minnesota law doesn't govern, then California law should.
>
> District court: But my task will be to just determine what's in the complaint and whether there's a viable MHRA claim?
>
> Attorney: And again, what I would seek leave to do if that happens is to amend the complaint to plead a claim under California state law.

The district court responded that if Longaker's attorney was to seek leave to amend, the local rules required that he submit an amended complaint and show how the

amended complaint cured the initial complaint's defects. Longaker did not file a motion to amend.

Thereafter, the district court found that Longaker lacked standing to assert his breach of contract claim because his interest in the guaranteed payments, although contingent at the time he filed for bankruptcy, was part of the bankruptcy estate. The district court also dismissed Longaker's MHRA retaliation claim, finding that he lacked standing to assert a claim under the MHRA and that the statute of limitations barred the claim. On appeal, Longaker argues that the district court erred in holding that he lacked standing to assert his breach of contract claim and that it abused its discretion in denying him leave to amend his complaint.

## II. Discussion

### A. Breach of Contract Claim

Longaker argues that the district court erred in holding that he lacked standing to assert his breach of contract claim. We review *de novo* the district court's grant of a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency, 615 F.3d 985, 988 (8th Cir. 2010).

Title 11 U.S.C. § 541 sets forth the property that comprises the bankruptcy estate. Section 541(a) provides in relevant part that the bankruptcy estate includes, with exceptions not applicable here: "(1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case . . . [and] (6) [p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(1) and (a)(6). Section 541's scope is broad, and it encompasses a debtor's contingent interests under a pre-petition

-4-

contract.  See Stoebner v. Wick (In re Wick), 276 F.3d 412, 415 (8th Cir. 2002) (debtor's interest in stock options under pre-petition contract were part of bankruptcy estate even though the options were unvested and contingent on debtor's continued employment); Rau v. Ryerson (In re Ryerson), 739 F.2d 1423, 1425 (9th Cir. 1984) (debtor's interest in "contract value" payment was part of bankruptcy estate even though the payment was "contingent at the time of filing and not payable" until the debtor was terminated).  Under the Agreement, Longaker held a contingent contractual interest in the guaranteed payments.  This interest would vest if Boston Scientific terminated him for a reason other than those provided in the Agreement.  Relying on Ryerson and other cases, the district court held that this contingent interest became part of the bankruptcy estate at the time Longaker filed his bankruptcy petition.

Longaker does not raise a serious objection to the district court's analysis on this issue.  Instead, he argues that the guaranteed payments constitute post-petition earnings for services, which are excluded from the bankruptcy estate under § 541(a)(6).[3]  Specifically, Longaker contends that, had Boston Scientific continued his employment, the guaranteed payments would have been post-petition earnings from services.  Boston Scientific argues that § 541(a)(6)'s exception is inapplicable because Longaker did not perform any post-petition services.

A post-petition payment on a pre-petition contractual interest belongs to the bankruptcy estate if the payment is neither attributable to nor conditioned upon the debtor's post-petition services.  See Parsons v. Union Planters Bank (In re Parsons), 280 F.3d 1185, 1188 (8th Cir. 2002) (rejecting debtor's argument that § 541(a)(6) excluded debtor's interest in real estate commissions received post-petition when debtor's right to commissions was attributable to debtor's pre-petition services); In

---

[3]Although Boston Scientific contends that Longaker waived his argument concerning § 541(a)(6), we find that Longaker preserved the argument for appeal.

-5-

re LaSpina, 304 B.R. 814, 820 (Bankr. S.D. Ohio 2004) (severance pay that debtor negotiated one week prior to filing for bankruptcy was not compensation for services performed post-petition and therefore was property of the bankruptcy estate). Relatedly, if the post-petition payment is attributable to the debtor's pre- and post-petition services, the payment is divided, pro rata. That is, the portion of the payment attributable to the debtor's pre-petition services remains property of the bankruptcy estate while the portion attributable to post-petition services is excluded from the estate under § 541(a)(6). See Wick, 276 F.3d at 416-17 (limiting bankruptcy estate's interest in stock options to the pro rata portion of the options related to debtor's pre-petition services when terms of stock option agreement required debtor to work for one year and, at the time debtor filed for bankruptcy, she had only worked four months); Ryerson, 739 F.2d at 1425-26 (making pro rata distribution of "contract value" payment where amount of payment had increased because of debtor's post-petition services).

The exception set forth in § 541(a)(6) does not apply to Longaker's claim for the guaranteed payments because he did not perform any post-petition services. Even assuming that Boston Scientific must pay the guaranteed payments, those amounts are neither attributable to nor conditioned on Longaker's post-petition services. We find the guaranteed payments analogous to the severance payment in LaSpina, where the court held that the payments, having no relation to the debtors' post-petition services, were sufficiently rooted in the debtors' pre-petition past and were therefore part of the debtor's bankruptcy estate. LaSpina, 304 B.R. at 820. Because the guaranteed payments, if due at all, are property of the bankruptcy estate, Longaker lacked standing to assert his breach of contract claim.[4] See Prochnow v. Apex Props.,

---

[4]The dissent asserts that "Boston Scientific prevented Longaker from actually providing post-petition services by firing him." Post at 14. Under the "prevention doctrine," "if the occurrence of an event which triggers the discharge of a promisor's obligation is caused by the promisor's culpable misconduct, the legal duty will not be discharged." Stevenson v. Stevenson Assocs. (In re Stevenson Assocs., Inc.), 777

Inc. (In re Prochnow), 467 B.R. 656, 665 (C.D. Ill. 2012) (debtor lacked standing to pursue real estate commission that was property of the bankruptcy estate).

Longaker's argument that had Boston Scientific not terminated him, the payments he received under the Agreement would have been future earnings falling within § 541(a)(6) does not require a different result. Courts construe § 541(a)(6)'s earning exception narrowly and apply it only to payments a debtor receives post-petition if the money is attributable to post-petition services actually rendered by the debtor. See Stinnett v. Laplante (In re Stinnett), 465 F.3d 309, 313 (7th Cir. 2006) ("[C]ase law provides that the [earnings exception] should be interpreted 'extremely narrowly' and 'excepts only earnings from services actually performed by an individual debtor.'" (quoting In re Prince, 85 F.3d 314, 323 (7th Cir. 1996))); In re A'Hearn, No. 11-00615, 2011 WL 4704235, at *6 (Bankr. N.D. Iowa Oct. 4, 2011) ("Funds are not subject to the [earnings exception] unless they are paid as the result of actual services performed postpetition, or are conditioned upon the performance

---

F.2d 415, 419 (8th Cir. 1985). In Stevenson, the alleged misconduct included "a rash course of business ventures," "improperly divert[ing] Associates' resources," "misus[ing] Associates' stable credit record to secure additional financing," "recklessly threatening Associates' solvency," and making the stock "worthless." Id. at 420. Here, Longaker alleges that Boston Scientific fired him for a reason other than those provided in the Agreement. Merely terminating an employee's contract does not amount to misconduct under the prevention doctrine. Cf. id. at 419-20, citing Christensen v. Felton, 322 F.2d 323, 325-26 (9th Cir. 1963) (invoking the prevention doctrine where evidence showed "that the purchaser had 'systematically looted the assets' of the purchased corporation, and that at the time of the transaction the purchased corporation's assets were more than twice its liabilities, but upon bankruptcy one year later it was 'hopelessly insolvent'"). Moreover, Boston Scientific is not relying on the "non-occurrence" of Longaker's post-petition services "to defeat [its] liability." See post at 14. Assuming it fired him for a reason not provided in the contract, and must pay the guaranteed payments, Boston Scientific would not retain those amounts — they would go to the bankruptcy estate.

of continued services postpetition."). Accordingly, Longaker's hypothetical argument does not render § 541(a)(6) applicable.

B.    Retaliation Claim

Longaker admits that he never filed a written request to amend his complaint. Instead, he argues that he requested leave to amend his complaint during the motion to dismiss hearing and that the district court abused its discretion by not allowing him to do so. A review of the hearing transcript belies this argument. Although Longaker's attorney discussed the possibility of amending his complaint, he indicated at the end of the hearing that he would seek leave to do so only if the district court dismissed the MHRA claim. The district court then explained that if "it's part of your request to seek leave to amend," the local rules required Longaker to submit an amended complaint and show how the amended complaint would cure the initial complaint's defects. Longaker's attorney's response was that this was "probably a bridge that is not to be crossed today." Because Longaker never requested leave to amend his complaint, the district court cannot be faulted for failing to allow him to do so. See Steele v. City of Bemidji, 257 F.3d 902, 905 (8th Cir. 2001) (explaining that a party "cannot fault the District Court for failing to grant him leave to amend when he did not seek permission to do so").

III. Conclusion

The judgment is affirmed.

BYE, Circuit Judge, concurring in part and dissenting in part.

I readily agree with the majority the district court properly denied David Longaker leave to amend his complaint. But I cannot join the majority's conclusion the remaining two years of salary and commissions in Longaker's employment

contract belong to the bankruptcy estate, not Longaker. The majority, like the district court, has confused the issue of Longaker's standing to bring his breach of contract claim with the validity of the claim itself. I believe Longaker has standing to bring his claim. Furthermore, because I believe the salary and commissions are earnings from post-petition services and the majority's opinion fails to properly balance the dual purposes of 11 U.S.C. § 541, I must respectfully dissent.

The district court dismissed David Longaker's complaint for lack of standing. Fed. R. Civ. P. 12(b)(1); see Faibisch v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir. 2002) ("[I]f a plaintiff lacks standing, the district court has no subject matter jurisdiction."). "[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." Whitmore v. Arkansas, 495 U.S. 149, 155 (1990). A plaintiff must present a "case or controversy" within the meaning of Article III of the United States Constitution to have standing. Id. This "irreducible constitutional minimum" requires a plaintiff to show an "injury in fact" that is "fairly . . . trace[able] to the challenged action of the defendant" and likely to be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (quotations and citations omitted).

Whether a plaintiff has suffered an injury "often turns on the nature and source of the claim asserted." Warth v. Seldin, 422 U.S. 490, 500 (1975); see Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 77 (1991). Accordingly, the standing inquiry, to some degree, "tracks [the plaintiff's] cause of action." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009); see William A. Fletcher, The Structure of Standing, 98 Yale L.J. 221, 234 (1988) (characterizing the standing inquiry as "a jurisdictional question[] involving a preliminary look at the merits—a sort of nibble at the apple before plaintiff takes a real bite"). The Supreme Court has warned that courts should not conflate standing with the merits of a plaintiff's claim. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89-90 (1998); see also Braden, 588 F.3d at 591 ("It is crucial, however, not to conflate Article III's requirement of

injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive."); 2 Milton I. Shadur & Mary P. Squires, <u>Moore's Federal Practice</u> § 12.30[1] (3d ed. 2012). "[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." <u>Steel Co.</u>, 523 U.S. at 89. Instead, whether the cause of action is valid is a merits issue. Jurisdiction is defeated only if "the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" <u>Id.</u> (quoting <u>Oneida Indian Nation v. Cnty. of Oneida</u>, 414 U.S. 661, 666 (1974)).

The majority, like the district court, erroneously conflates standing with the validity of Longaker's cause of action. Longaker's standing turns on the *injury* he alleges. <u>See</u> <u>Braden</u>, 588 F.3d at 592. The validity of his claim—in other words, whether he will ultimately succeed in obtaining relief—turns on the *cause of action* he brings. <u>See</u> <u>id.</u> Longaker has stated a personal injury because Boston Scientific allegedly breached his employment contract and denied Longaker salary and commissions that are rightly his. That injury is traceable to Boston Scientific's conduct because Boston Scientific breached the contract. And the court can redress Longaker's injury by issuing a favorable judgment. <u>See</u> <u>Lujan</u>, 504 U.S. at 560. Longaker has thus presented a "case or controversy." The majority opinion concluding otherwise is incorrect.

Having established Longaker has standing, I now endeavor to demonstrate Longaker presents a valid cause of action and is entitled to relief. As usual, the task of determining the meaning of a statute begins with the text of the statute itself. <u>United States v. Ron Pair Enters.</u>, 489 U.S. 235, 241 (1989); <u>Landreth Timber Co. v. Landreth</u>, 471 U.S. 681, 685 (1985). The commencement of a bankruptcy case creates an estate. 11 U.S.C. § 541(a). The estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." <u>Id.</u> § 541(a)(1). The scope of the estate is broad. <u>See</u> <u>Owen v. Owen</u>, 500 U.S. 305, 308

(1991). It includes "even future, non-possessory, contingent, speculative, and derivative interests." In re Carlton, 309 B.R. 67, 71 (Bankr. S.D. Fla. 2004). Broad as it may be, the estate does not include "earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6).

Section 541(a)(1) and § 541(a)(6) illustrate the dual purposes of § 541. First, it gives creditors full availment of the debtor's non-exempt assets to pay off the creditors' claims against the debtor to the maximum extent possible. Segal v. Rochelle, 382 U.S. 375, 379 (1966). It accomplishes this purpose by defining the estate broadly and designating that proceeds from or profits of estate property are likewise part of the estate. 11 U.S.C. § 541(a)(6). Second, it allows the debtor to make a "fresh start" by accumulating new wealth free and clear of the reach of his or her creditors. Id. It accomplishes this purpose by using the petition date to clearly demarcate the line between the assets of the estate and the assets of the debtor, or, in other words, the right of creditors to be repaid and the right of the debtor to begin anew. See Andrews v. Riggs Nat'l Bank (In re Andrews), 80 F.3d 906, 909-10 (4th Cir. 1996). Pre-petition assets are rooted in the debtor's pre-petition activities and belong to the estate. Segal, 382 U.S. at 380. Post-petition assets flow from the debtor's post-petition activities; they belong to the debtor. Id. Applying these principles to the present case, if Longaker's future salary and commissions are rooted in his pre-petition activities, those assets belong to the estate. If the future salary and commissions are rooted in his post-petition activities, those assets are Longaker's to keep.

The characterization of activities as "pre-petition" or "post-petition" is often complicated. Many pre-petition interests are contingent on the debtor's performance of post-petition services. In such a case, the extent of the estate's interest in an asset cannot be greater than the interest the debtor holds in the asset at the petition date. Drews v. Vote (In re Vote), 276 F.3d 1024, 1026 (8th Cir. 2002) (opinion of Wollman, J.) ("[D]espite the broad scope of § 541, it 'is not intended to expend [sic]

the debtor's rights against others more than they exist at the commencement of the case.'" (quoting S. Rep. 95-989, at 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868)). Therefore, the estate's share of an asset contingent on post-petition services cannot exceed the extent of the asset attributable to the pre-petition services of the debtor. See Prochnow v. Apex Props., Inc. (In re Prochnow), 467 B.R. 656, 663-64 (C.D. Ill. 2012) (holding commissions from pre-petition services are part of the bankruptcy estate, but commissions from post-petition services are not); Larson v. Cameron (In re Larson), 147 B.R. 39, 44 (Bankr. D. N.D. 1992) (holding portion of stock options which depends on performance of post-petition services are not estate property).

In the instant matter, the majority concludes Longaker's right to future salary and commissions is a contingent interest that became part of the bankruptcy estate when Longaker filed his petition. Ante at 5; see Stoebner v. Wick (In re Wick), 276 F.3d 412, 415 (8th Cir. 2002); Rau v. Ryerson (In re Ryerson), 739 F.2d 1423, 1425 (9th Cir. 1984). Upon close reading, Wick and Ryerson do not support the majority's classification of Longaker's interest. In Wick, a Chapter 7 debtor had stock options which entitled her to a 24.5% ownership stake in a company. The interest was contingent on her continued employment for one year following the signing of the stock option. At the time she filed for Chapter 7, Wick had been employed by the company for four months. We recognized the value of the stock options was due in part to the post-petition work Wick performed to complete the vesting period, and Wick should "receive[] the benefit of her post-petition labor, as mandated by 11 U.S.C. § 541(a)(6)." Wick, 276 F.3d at 417. The same is true in Longaker's case. The second and third years of his employment agreement compensate him for labor performed post-petition. He should get the benefit of that labor.

In Ryerson, a manager at an insurance company signed a contract which entitled him to termination payments of a certain figure, multiplied by his number of years of service as a manager. One year of service was a condition precedent to

eligibility.  When he filed his Chapter 7 petition, Ryerson had already served four years, and was thus qualified to receive payments.  Ryerson argued the payments belonged to him because at the time he filed his petition, he had not yet been terminated, and therefore had no interest in the termination payments.  The Ninth Circuit rejected his argument and held the termination payments were estate property.  Ryerson is of little help.  There, the only post-petition "service" Ryerson was required to perform was getting fired.  He had already performed the work that entitled him to the benefit.  Booth v. Vaughan (In re Booth), 260 B.R. 281, 289 (B.A.P. 6th Cir. 2001) ("[T]he payment in Ryerson was grounded in a prepetition contract and was based on the debtor's prepetition services.").  Here, by contrast, Longaker had not yet performed any of the work that entitled him to the salary and commissions the second and third years of the employment agreement provided him.  The termination payments in Ryerson are, in short, more "sufficiently rooted in the pre-bankruptcy past" than Longaker's post-petition, yet-to-be-performed job activities.  Segal, 382 U.S. at 380.  Merely designating Longaker's interest as contingent and lumping pre- and post-petition services together not only strays from our prior recognition that contingent interests are estate property only to the extent they are attributable to the debtor's pre-petition services, but also inappropriately advances the creditor's interest in repayment over the debtor's interest in starting over unsaddled by debt.  If Longaker's employment contract had been for twenty years rather than three years, the majority's definition would direct the remaining nineteen years of salary and commissions to the estate.  This is hardly the "fresh start" § 541 intends.

The majority nevertheless concludes that even if § 541(a)(6)'s reservation of earnings from post-petition services theoretically applied to the instant matter, Longaker still would not be entitled to his salary and commissions because he did not actually perform any post-petition services.  *Ante* at 6; see In re A'Hearn, No. 11-00615, 2011 WL 4704235, at *6 (Bankr. N.D. Iowa Oct. 4, 2011).  This cannot be correct.  The doctrine of prevention provides "where a party to a contract is the cause of the failure of performance of the obligation due him or her, that party cannot

in any way take advantage of that failure."  13 Richard A. Lord, Williston on Contracts § 39:3 (4th ed. 2000); see La Societe Generale Immobiliere v. Minneapolis Cmty. Dev. Agency, 44 F.3d 629, 638 (8th Cir. 1994) (quoting Zobel & Dahl Constr. v. Crotty, 356 N.W.2d 42, 45 (Minn. 1984)).  We have recognized without ambiguity the prevention doctrine applies in bankruptcy cases.  Stevenson v. Stevenson Assocs. (In re Stevenson Assocs.), 777 F.2d 415, 419-20 (8th Cir. 1985).  The rationale behind the doctrine is two-fold.  The first rationale is equitable.  It is unfair for one who prevents the fulfillment of a condition precedent to rely on the non-occurrence of that condition to defeat his or her liability.  Omaha Pub. Power Dist. v. Emp'rs Fire Ins. Co., 327 F.2d 912, 916 (8th Cir. 1964); Nodland v. Chirpich, 240 N.W.2d 513, 516-17 (Minn. 1976) (quotation and citation omitted); Lord, supra, § 39:4.  Second, it emanates from the promise of good-faith performance, which Minnesota law implies in every contract.  Crotty, 356 N.W.2d at 45 ("[E]very contract contains an implied condition that each party will not unjustifiably hinder the other party from performing.").

Consider an example.  A company tells its remotely-located salesperson he must call by Friday at noon and report his sales figures to receive a bonus.  The company then disconnects its phone lines, effectively preventing the salesperson from calling.  In such a case, the prevention doctrine would forbid the company from raising the failure of the condition precedent—reporting the sales figures—as grounds to avoid paying a bonus.  Because the company prevented the salesperson from reporting his sales figures and thus fulfilling the condition, the company cannot rely on the non-occurrence of that condition to defeat its liability.

Just so here.  Boston Scientific prevented Longaker from actually providing post-petition services by firing him.  Boston Scientific has, in other words, prevented Longaker from fulfilling the condition precedent.  It should not be allowed to rely on the non-occurrence of that condition to avoid paying the salary and commissions to Longaker.  Yet the majority allows Boston Scientific to do exactly that, and in doing

-14-

so, sanctions a result that is inequitable and inconsistent with Minnesota contract principles.[5]

I would hold Longaker has standing, and if the district court concluded on remand that Boston Scientific breached the employment contract, Longaker would be entitled to the portion of his salary and commissions attributable to his post-petition services. Holding as such hews more closely to our prior construction of the statute and the balance § 541 strikes between creditors' right to repayment and the debtor's right to a "fresh start." It also possesses the benefit of fidelity to long-settled principles of equity and contract interpretation. Because I cannot join the majority's opinion to the contrary, I respectfully dissent.

—————————————————————————

—————————————————

[5]The majority states "[m]erely terminating an employee's contract does not amount to misconduct under the prevention doctrine." Ante at 7 n.4; Stevenson, 777 F.2d 420. Rather, the majority suggests more extreme misconduct—a "parade of horribles"—is necessary to invoke the doctrine. This is wrong. Nowhere does Stevenson insist on a "parade of horribles," and the majority's "cf." citation thereto appears to acknowledge it conjures a doctrinal requirement that does not exist. Minnesota law, which governs this breach of contract claim, shows it is the *existence* of culpable misconduct, rather than its *extent*, which invokes the prevention doctrine. See Crotty, 356 N.W.2d at 45 (holding the prevention doctrine applied where a homeowner unreasonably failed to allow a contractor to make repairs); Nodland, 240 N.W.2d at 517 (applying the doctrine where landowners wrongfully misrepresented a co-owner's assent to a land sale contract).

The majority, without so much as a breath of analysis from the district court on the matter, takes it upon itself to conclude firing Longaker for a reason not enumerated in the employment contract does not amount to culpable misconduct. "[W]e do not normally consider issues which the district court did not rule upon . . . ." First Union Nat'l Bank ex rel. Se. Timber Leasing Statutory Trust v. Pictet Overseas Trust Corp., 351 F.3d 810, 816 (8th Cir. 2003) (opinion of Wollman, J.). Unlike the majority, I am not keen to dispense with this rather fundamental principle. I believe Stevenson, the very case the majority cites, shows the way, and would remand for the district court to consider whether Longaker's termination was culpable misconduct. Stevenson, 777 F.2d at 420-21 (acknowledging the factual record is unresolved and remanding to the bankruptcy court to consider the issue of culpable misconduct).

-15-